Justice KENNEDY delivered the opinion of the Court.
*439 This case presents the question of how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed. The relevant statutory provisions are set forth at 18 U.S.C. § 2259. Enacted as a component of the Violence Against Women Act of 1994, § 2259 requires district courts to award restitution for certain federal criminal offenses, including child-pornography possession.
Petitioner Doyle Randall Paroline pleaded guilty to such an offense. He admitted to possessing between 150 and 300 images of child pornography, which included two that depicted the sexual exploitation of a young girl, now a young woman, who goes by the pseudonym "Amy" for this litigation. The question is what causal relationship must be established between the defendant's conduct and a victim's losses for purposes of determining the right to, and the amount of, restitution under § 2259.
I
Three decades ago, this Court observed that "the exploitive use of children in the production of pornography has become a serious national problem." New York v. Ferber, 458 U.S. 747, 749, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). The demand for child pornography harms children in part because it drives production, which *440 involves child abuse. The harms caused by child pornography, however, are still more *1717 extensive because child pornography is "a permanent record" of the depicted child's abuse, and "the harm to the child is exacerbated by [its] circulation." Id., at 759, 102 S.Ct. 3348. Because child pornography is now traded with ease on the Internet, "the number of still images and videos memorializing the sexual assault and other sexual exploitation of children, many very young in age, has grown exponentially." United States Sentencing Comm'n, P. Saris et al., Federal Child Pornography Offenses 3 (2012) (hereinafter Sentencing Comm'n Report).
One person whose story illustrates the devastating harm caused by child pornography is the respondent victim in this case. When she was eight and nine years old, she was sexually abused by her uncle in order to produce child pornography. Her uncle was prosecuted, required to pay about $6,000 in restitution, and sentenced to a lengthy prison term. The victim underwent an initial course of therapy beginning in 1998 and continuing into 1999. By the end of this period, her therapist's notes reported that she was " 'back to normal' "; her involvement in dance and other age-appropriate activities, and the support of her family, justified an optimistic assessment. App. 70-71. Her functioning appeared to decline in her teenage years, however; and a major blow to her recovery came when, at the age of 17, she learned that images of her abuse were being trafficked on the Internet. Id., at 71. The digital images were available nationwide and no doubt worldwide. Though the exact scale of the trade in her images is unknown, the possessors to date easily number in the thousands. The knowledge that her images were circulated far and wide renewed the victim's trauma and made it difficult for her to recover from her abuse. As she explained in a victim impact statement submitted to the District Court in this case:
"Every day of my life I live in constant fear that someone will see my pictures and recognize me and that I *441 will be humiliated all over again. It hurts me to know someone is looking at them-at me-when I was just a little girl being abused for the camera. I did not choose to be there, but now I am there forever in pictures that people are using to do sick things. I want it all erased. I want it all stopped. But I am powerless to stop it just like I was powerless to stop my uncle.... My life and my feelings are worse now because the crime has never really stopped and will never really stop.... It's like I am being abused over and over and over again." Id ., at 60-61.
The victim says in her statement that her fear and trauma make it difficult for her to trust others or to feel that she has control over what happens to her. Id., at 63.
The full extent of this victim's suffering is hard to grasp. Her abuser took away her childhood, her self-conception of her innocence, and her freedom from the kind of nightmares and memories that most others will never know. These crimes were compounded by the distribution of images of her abuser's horrific acts, which meant the wrongs inflicted upon her were in effect repeated; for she knew her humiliation and hurt were and would be renewed into the future as an ever-increasing number of wrongdoers witnessed the crimes committed against her.
Petitioner Paroline is one of the individuals who possessed this victim's images. In 2009, he pleaded guilty in federal court to one count of possession of material involving the sexual exploitation of children in violation of 18 U.S.C. § 2252. 672 F.Supp.2d 781, 783 (E.D.Tex.2009). Paroline admitted to knowing possession of between 150 and *1718 300 images of child pornography, two of which depicted the respondent victim. Ibid. The victim sought restitution under § 2259, asking for close to $3.4 million, consisting of nearly $3 million in lost income and about $500,000 in future treatment and counseling costs. App. 52, 104. She also sought attorney's fees and costs. 672 F.Supp.2d, at 783. *442 The parties submitted competing expert reports. They stipulated that the victim did not know who Paroline was and that none of her claimed losses flowed from any specific knowledge about him or his offense conduct. Id., at 792, and n. 11; App. 230.
After briefing and hearings, the District Court declined to award restitution. 672 F.Supp.2d, at 793. The District Court observed that "everyone involved with child pornography-from the abusers and producers to the end-users and possessors-contribute[s] to [the victim's] ongoing harm." Id., at 792. But it concluded that the Government had the burden of proving the amount of the victim's losses "directly produced by Paroline that would not have occurred without his possession of her images." Id., at 791. The District Court found that, under this standard, the Government had failed to meet its burden of proving what losses, if any, were proximately caused by Paroline's offense. It thus held that "an award of restitution is not appropriate in this case." Id., at 793.
The victim sought a writ of mandamus, asking the United States Court of Appeals for the Fifth Circuit to direct the District Court to order Paroline to pay restitution in the amount requested. In re Amy, 591 F.3d 792, 793 (2009). The Court of Appeals denied relief. Id., at 795. The victim sought rehearing. Her rehearing request was granted, as was her petition for a writ of mandamus. In re Amy Unknown, 636 F.3d 190, 201 (2011).
The Fifth Circuit reheard the case en banc along with another case, in which the defendant, Michael Wright, had raised similar issues in appealing an order of restitution under § 2259, see United States v. Wright, 639 F.3d 679, 681 (2011) (per curiam ). As relevant, the Court of Appeals set out to determine the level of proof required to award restitution to victims in cases like this. It held that § 2259 did not limit restitution to losses proximately caused by the defendant, and each defendant who possessed the victim's images *443 should be made liable for the victim's entire losses from the trade in her images, even though other offenders played a role in causing those losses. In re Amy Unknown, 701 F.3d 749, 772-774 (2012) (en banc).
Paroline sought review here. Certiorari was granted to resolve a conflict in the Courts of Appeals over the proper causation inquiry for purposes of determining the entitlement to and amount of restitution under § 2259. 570 U.S. ----, 133 S.Ct. 2886, 186 L.Ed.2d 932 (2013). For the reasons set forth, the decision of the Court of Appeals is vacated.
II
Title 18 U.S.C. § 2259(a) provides that a district court "shall order restitution for any offense" under Chapter 110 of Title 18, which covers a number of offenses involving the sexual exploitation of children and child pornography in particular. Paroline was convicted of knowingly possessing child pornography under § 2252, a Chapter 110 offense.
Section 2259 states a broad restitutionary purpose: It requires district courts to order defendants "to pay the victim ... the full amount of the victim's losses as determined by the court," § 2259(b)(1), and expressly states that "[t]he issuance of a restitution order under this section is *1719 mandatory," § 2259(b)(4)(A). Section 2259(b)(2) provides that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664," which in turn provides in relevant part that "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government," § 3664(e).
The threshold question the Court faces is whether § 2259 limits restitution to those losses proximately caused by the defendant's offense conduct. The Fifth Circuit held that it does not, contrary to the holdings of other Courts of Appeals to have addressed the question. Compare, e.g., 701 F.3d, at 752 (no general proximate-cause requirement applies under § 2259 ), with *444 United States v. Rogers, 714 F.3d 82, 89 (C.A.1 2013) (general proximate-cause requirement applies under § 2259 ); United States v. Benoit, 713 F.3d 1, 20 (C.A.10 2013) (same); United States v. Fast, 709 F.3d 712, 721-722 (C.A.8 2013) (same); United States v. Laraneta, 700 F.3d 983, 989-990 (C.A.7 2012) (same); United States v. Burgess, 684 F.3d 445, 456-457 (C.A.4 2012) (same); United States v. Evers, 669 F.3d 645, 659 (C.A.6 2012) (same); United States v. Aumais, 656 F.3d 147, 153 (C.A.2 2011) (same); United States v. Kennedy, 643 F.3d 1251, 1261 (C.A.9 2011) (same); United States v. Monzel, 641 F.3d 528, 535 (C.A.D.C.2011) (same); United States v. McDaniel, 631 F.3d 1204, 1208-1209 (C.A.11 2011) (same).
As a general matter, to say one event proximately caused another is a way of making two separate but related assertions. First, it means the former event caused the latter. This is known as actual cause or cause in fact. The concept of actual cause "is not a metaphysical one but an ordinary, matter-of-fact inquiry into the existence ... of a causal relation as laypeople would view it." 4 F. Harper, F. James, & O. Gray, Torts § 20.2, p. 100 (3d ed. 2007).
Every event has many causes, however, see ibid., and only some of them are proximate, as the law uses that term. So to say that one event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result. The idea of proximate cause, as distinct from actual cause or cause in fact, defies easy summary. It is "a flexible concept," Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 654, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008), that generally "refers to the basic requirement that ... there must be 'some direct relation between the injury asserted and the injurious conduct alleged,' " CSX Transp., Inc. v. McBride, 564 U.S. ----, ----, 131 S.Ct. 2630, 2645, 180 L.Ed.2d 637 (2011) (ROBERTS, C.J., dissenting) (quoting Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) ). The concept of proximate causation is applicable in both criminal and tort law, and the analysis is parallel in many instances. 1 W. LaFave, *445 Substantive Criminal Law § 6.4(c), p. 471 (2d ed. 2003) (hereinafter LaFave). Proximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct. See, e.g., ibid. ; 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 29, p. 493 (2005) (hereinafter Restatement). A requirement of proximate cause thus serves, inter alia, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity. Exxon Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 838-839, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996). *1720 All parties agree § 2259 imposes some causation requirement. The statute defines a victim as "the individual harmed as a result of a commission of a crime under this chapter." § 2259(c). The words "as a result of" plainly suggest causation. See Pacific Operators Offshore, LLP v. Valladolid, 565 U.S. ----, ----, 132 S.Ct. 680, 690-691, 181 L.Ed.2d 675 (2012); see also Burrage v. United States, 571 U.S. ----, ----, 134 S.Ct. 881, 886-887, 187 L.Ed.2d 715 (2014). And a straightforward reading of § 2259(c) indicates that the term "a crime" refers to the offense of conviction. Cf. Hughey v. United States, 495 U.S. 411, 416, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). So if the defendant's offense conduct did not cause harm to an individual, that individual is by definition not a "victim" entitled to restitution under § 2259.
As noted above, § 2259 requires a court to order restitution for "the full amount of the victim's losses," § 2259(b)(1), which the statute defines to include "any costs incurred by the victim" for six enumerated categories of expense, § 2259(b)(3). The reference to "costs incurred by the victim" is most naturally understood as costs stemming from the source that qualifies an individual as a "victim" in the first place-namely, ones arising "as a result of" the offense. Thus, as is typically the case with criminal restitution, § 2259 is intended to compensate victims for losses caused by the offense of conviction. See id., at 416, 110 S.Ct. 1979. This is an important point, for it means the central concern of the causal inquiry must be the conduct of the particular defendant from whom restitution is sought.
*446 But there is a further question whether restitution under § 2259 is limited to losses proximately caused by the offense. As noted, a requirement of proximate cause is more restrictive than a requirement of factual cause alone. Even if § 2259 made no express reference to proximate causation, the Court might well hold that a showing of proximate cause was required. Proximate cause is a standard aspect of causation in criminal law and the law of torts. See 1 LaFave § 6.4(a), at 464-466; W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 41, p. 263 (5th ed. 1984) (hereinafter Prosser and Keeton). Given proximate cause's traditional role in causation analysis, this Court has more than once found a proximate-cause requirement built into a statute that did not expressly impose one. See Holmes, supra, at 265-268, 112 S.Ct. 1311; Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 529-536, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) ; see also CSX Transp., Inc., supra, at ----, 131 S.Ct., at 2646 (ROBERTS, C.J., dissenting) ("We have applied the standard requirement of proximate cause to actions under federal statutes where the text did not expressly provide for it"); Lexmark Int'l, Inc. v. Static Control Components, Inc., ante, at 13-14.
Here, however, the interpretive task is easier, for the requirement of proximate cause is in the statute's text. The statute enumerates six categories of covered losses. § 2259(b)(3). These include certain medical services, § 2259(b)(3)(A) ; physical and occupational therapy, § 2259(b)(3)(B) ; transportation, temporary housing, and child care, § 2259(b)(3)(C) ; lost income, § 2259(b)(3)(D) ; attorney's fees and costs, § 2259(b)(3)(E) ; and a final catchall category for "any other losses suffered by the victim as a proximate result of the offense," § 2259(b)(3)(F).
The victim argues that because the "proximate result" language appears only in the final, catchall category of losses set forth at § 2259(b)(3)(F), the statute has no proximate-cause requirement for losses falling within the prior enumerated categories.
*1721 She justifies this reading of § 2259(b) in part on *447 the grammatical rule of the last antecedent, "according to which a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows." Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). But that rule is "not an absolute and can assuredly be overcome by other indicia of meaning." Ibid. The Court has not applied it in a mechanical way where it would require accepting "unlikely premises." United States v. Hayes, 555 U.S. 415, 425, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009).
Other canons of statutory construction, moreover, work against the reading the victim suggests. "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." Porto Rico Railway, Light & Power Co. v. Mor, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920). Furthermore, "[i]t is ... a familiar canon of statutory construction that [catchall] clauses are to be read as bringing within a statute categories similar in type to those specifically enumerated." Federal Maritime Comm'n v. Seatrain Lines, Inc., 411 U.S. 726, 734, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973). Here, § 2259(b)(3)(F) defines a broad, final category of "other losses suffered ... as a proximate result of the offense." That category is most naturally understood as a summary of the type of losses covered-i.e., losses suffered as a proximate result of the offense.
The victim says that if Congress had wanted to limit the losses recoverable under § 2259 to those proximately caused by the offense, it could have written the statute the same way it wrote § 2327, which provides for restitution to victims of telemarketing fraud. Section 2327, which is written and structured much like § 2259, simply defines the term "full amount of the victim's losses" as "all losses suffered by the victim as a proximate result of the offense." § 2327(b)(3). In essence the victim argues that the first five categories of losses enumerated in § 2259(b)(3) would be superfluous if all were governed by a proximate-cause requirement. That, *448 however, is unpersuasive. The first five categories provide guidance to district courts as to the specific types of losses Congress thought would often be the proximate result of a Chapter 110 offense and could as a general matter be included in an award of restitution.
Reading the statute to impose a general proximate-cause limitation accords with common sense. As noted above, proximate cause forecloses liability in situations where the causal link between conduct and result is so attenuated that the so-called consequence is more akin to mere fortuity. For example, suppose the traumatized victim of a Chapter 110 offender needed therapy and had a car accident on the way to her therapist's office. The resulting medical costs, in a literal sense, would be a factual result of the offense. But it would be strange indeed to make a defendant pay restitution for these costs. The victim herself concedes Congress did not intend costs like these to be recoverable under § 2259. Brief for Respondent Amy 45. But she claims that it is unnecessary to "read ... into" § 2259 a proximate-cause limitation in order to exclude costs of that sort. Ibid. She says the statute "contextually and inferentially require[s] a nexus for why" the losses were sustained-i.e., a sufficient connection to child pornography. Id., at 46.
The victim may be right that the concept of proximate cause is not necessary to impose sensible limitations on restitution *1722 for remote consequences. But one very effective way, and perhaps the most obvious way, of excluding costs like those arising from the hypothetical car accident described above would be to incorporate a proximate-cause limitation into the statute. Congress did so, and for reasons given above the proximate-cause requirement applies to all the losses described in § 2259. Restitution is therefore proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses.
III
*449 There remains the difficult question of how to apply the statute's causation requirements in this case. The problem stems from the somewhat atypical causal process underlying the losses the victim claims here. It is perhaps simple enough for the victim to prove the aggregate losses, including the costs of psychiatric treatment and lost income, that stem from the ongoing traffic in her images as a whole. (Complications may arise in disaggregating losses sustained as a result of the initial physical abuse, but those questions may be set aside for present purposes.) These losses may be called, for convenience's sake, a victim's "general losses." The difficulty is in determining the "full amount" of those general losses, if any, that are the proximate result of the offense conduct of a particular defendant who is one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim.
In determining the amount of general losses a defendant must pay under § 2259 the ultimate question is how much of these losses were the "proximate result," § 2259(b)(3)(F), of that individual's offense. But the most difficult aspect of this inquiry concerns the threshold requirement of causation in fact. To be sure, the requirement of proximate causation, as distinct from mere causation in fact, would prevent holding any possessor liable for losses caused in only a remote sense. But the victim's costs of treatment and lost income resulting from the trauma of knowing that images of her abuse are being viewed over and over are direct and foreseeable results of child-pornography crimes, including possession, assuming the prerequisite of factual causation is satisfied. The primary problem, then, is the proper standard of causation in fact.
A
The traditional way to prove that one event was a factual cause of another is to show that the latter would not have *450 occurred "but for" the former. This approach is a familiar part of our legal tradition, see 1 LaFave § 6.4(b), at 467-468; Prosser and Keeton § 41, at 266, and no party disputes that a showing of but-for causation would satisfy § 2259's factual-causation requirement. Sometimes that showing could be made with little difficulty. For example, but-for causation could be shown with ease in many cases involving producers of child pornography, see § 2251(a); parents who permit their children to be used for child-pornography production, see § 2251 (b); individuals who sell children for such purposes, see § 2251A; or the initial distributor of the pornographic images of a child, see § 2252.
In this case, however, a showing of but-for causation cannot be made. The District Court found that the Government failed to prove specific losses caused by Paroline in a but-for sense and recognized that it would be "incredibly difficult" to do so in a case like this. 672 F.Supp.2d, at 791-793. That finding has a solid foundation in the record, and it is all but unchallenged in this Court. See Brief for Respondent *1723 Amy 63; Brief for United States 19, 25. But see Supp. Brief for United States 8-10. From the victim's perspective, Paroline was just one of thousands of anonymous possessors. To be sure, the victim's precise degree of trauma likely bears a relation to the total number of offenders; it would probably be less if only 10 rather than thousands had seen her images. But it is not possible to prove that her losses would be less (and by how much) but for one possessor's individual role in the large, loosely connected network through which her images circulate. See Sentencing Comm'n Report, at ii, xx. Even without Paroline's offense, thousands would have viewed and would in the future view the victim's images, so it cannot be shown that her trauma and attendant losses would have been any different but for Paroline's offense. That is especially so given the parties' stipulation that the victim had no knowledge of Paroline. See supra, at 1736 - 1737. *451 Recognizing that losses cannot be substantiated under a but-for approach where the defendant is an anonymous possessor of images in wide circulation on the Internet, the victim and the Government urge the Court to read § 2259 to require a less restrictive causation standard, at least in this and similar child-pornography cases. They are correct to note that courts have departed from the but-for standard where circumstances warrant, especially where the combined conduct of multiple wrongdoers produces a bad outcome. See Burrage, 571 U.S., at ----, 134 S.Ct., at 890 (acknowledging "the undoubted reality that courts have not always required strict but-for causality, even where criminal liability is at issue").
The victim and the Government look to the literature on criminal and tort law for alternatives to the but-for test. The Court has noted that the "most common" exception to the but-for causation requirement is applied where "multiple sufficient causes independently ... produce a result," ibid. ; see also 1 LaFave § 6.4(b), at 467-469; 1 Restatement § 27, at 376. This exception is an ill fit here, as all parties seem to recognize. Paroline's possession of two images of the victim was surely not sufficient to cause her entire losses from the ongoing trade in her images. Nor is there a practical way to isolate some subset of the victim's general losses that Paroline's conduct alone would have been sufficient to cause. See Brief for United States 26, n. 11.
Understandably, the victim and the Government thus concentrate on a handful of less demanding causation tests endorsed by authorities on tort law. One prominent treatise suggests that "[w]hen the conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a but-for cause of the event, and application of the but-for rule to them individually would absolve all of them, the conduct of each is a cause in fact of the event." Prosser and Keeton § 41, at 268. The Restatement adopts a similar exception for "[m]ultiple sufficient causal sets." 1 *452 Restatement § 27, Comment f, at 380-381. This is where a wrongdoer's conduct, though alone "insufficient ... to cause the plaintiff's harm," is, "when combined with conduct by other persons," "more than sufficient to cause the harm." Ibid . The Restatement offers as an example a case in which three people independently but simultaneously lean on a car, creating enough combined force to roll it off a cliff. Ibid. Even if each exerted too little force to move the car, and the force exerted by any two was sufficient to the move the car, each individual is a factual cause of the car's destruction. Ibid. The Government argues that these authorities "provide ample support for an 'aggregate' causation theory," Brief for United States 18, and *1724 that such a theory would best effectuate congressional intent in cases like this, id., at 18-19. The victim says much the same. Brief for Respondent Amy 42-43.
These alternative causal tests are a kind of legal fiction or construct. If the conduct of a wrongdoer is neither necessary nor sufficient to produce an outcome, that conduct cannot in a strict sense be said to have caused the outcome. Nonetheless, tort law teaches that alternative and less demanding causal standards are necessary in certain circumstances to vindicate the law's purposes. It would be anomalous to turn away a person harmed by the combined acts of many wrongdoers simply because none of those wrongdoers alone caused the harm. And it would be nonsensical to adopt a rule whereby individuals hurt by the combined wrongful acts of many (and thus in many instances hurt more badly than otherwise) would have no redress, whereas individuals hurt by the acts of one person alone would have a remedy. Those are the principles that underlie the various aggregate causation tests the victim and the Government cite, and they are sound principles.
These alternative causal standards, though salutary when applied in a judicious manner, also can be taken too far. That is illustrated by the victim's suggested approach to *453 applying § 2259 in cases like this. The victim says that under the strict logic of these alternative causal tests, each possessor of her images is a part of a causal set sufficient to produce her ongoing trauma, so each possessor should be treated as a cause in fact of all the trauma and all the attendant losses incurred as a result of the entire ongoing traffic in her images. Id., at 43. And she argues that if this premise is accepted the further requirement of proximate causation poses no barrier, for she seeks restitution only for those losses that are the direct and foreseeable result of child-pornography offenses. Because the statute requires restitution for the "full amount of the victim's losses," including "any ... losses suffered by the victim as a proximate result of the offense," § 2259(b), she argues that restitution is required for the entire aggregately caused amount.
The striking outcome of this reasoning-that each possessor of the victim's images would bear the consequences of the acts of the many thousands who possessed those images-illustrates why the Court has been reluctant to adopt aggregate causation logic in an incautious manner, especially in interpreting criminal statutes where there is no language expressly suggesting Congress intended that approach. See Burrage, 571 U.S., at ----, 134 S.Ct., at 890-891. Even if one were to refer just to the law of torts, it would be a major step to say there is a sufficient causal link between the injury and the wrong so that all the victim's general losses were "suffered ... as a proximate result of [Paroline's] offense," § 2259(b)(3)(F).
And there is special reason not to do so in the context of criminal restitution. Aside from the manifest procedural differences between criminal sentencing and civil tort lawsuits, restitution serves purposes that differ from (though they overlap with) the purposes of tort law. See, e.g., Kelly v. Robinson, 479 U.S. 36, 49, n. 10, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (noting that restitution is, inter alia, "an effective rehabilitative penalty"). Legal fictions developed in the law of torts cannot *454 be imported into criminal restitution and applied to their utmost limits without due consideration of these differences.
Contrary to the victim's suggestion, this is not akin to a case in which a "gang of ruffians" collectively beats a person, or in which a woman is "gang raped by five men on one night or by five men on five sequential *1725 nights." Brief for Respondent Amy 55. First, this case does not involve a set of wrongdoers acting in concert, see Prosser and Keeton § 52, at 346 (discussing full liability for a joint enterprise); for Paroline had no contact with the overwhelming majority of the offenders for whose actions the victim would hold him accountable. Second, adopting the victim's approach would make an individual possessor liable for the combined consequences of the acts of not just 2, 5, or even 100 independently acting offenders; but instead, a number that may reach into the tens of thousands. See Brief for Respondent Amy 65.
It is unclear whether it could ever be sensible to embrace the fiction that this victim's entire losses were the "proximate result," § 2259(b)(3)(F), of a single possessor's offense. Paroline's contribution to the causal process underlying the victim's losses was very minor, both compared to the combined acts of all other relevant offenders, and in comparison to the contributions of other individual offenders, particularly distributors (who may have caused hundreds or thousands of further viewings) and the initial producer of the child pornography. See 1 Restatement § 36, and Comment a, at 597-598 (recognizing a rule excluding from liability individuals whose contribution to a causal set that factually caused the outcome "pales by comparison to the other contributions to that causal set"). But see id., § 27, Reporters' Note, Comment i, at 395 ("The conclusion that none of" two dozen small contributions to a sufficient causal set was a cause of the outcome "is obviously untenable"). Congress gave no indication that it intended its statute to be applied in the expansive manner the victim suggests, a manner *455 contrary to the bedrock principle that restitution should reflect the consequences of the defendant's own conduct, see Hughey, 495 U.S., at 416, 110 S.Ct. 1979, not the conduct of thousands of geographically and temporally distant offenders acting independently, and with whom the defendant had no contact.
The victim argues that holding each possessor liable for her entire losses would be fair and practical, in part because offenders may seek contribution from one another. Brief for Respondent Amy 58. If that were so, it might mitigate to some degree the concerns her approach presents. But there is scant authority for her contention that offenders convicted in different proceedings in different jurisdictions and ordered to pay restitution to the same victim may seek contribution from one another. There is no general federal right to contribution. Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 96-97, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). Nor does the victim point to any clear statutory basis for a right to contribution in these circumstances. She thus suggests that this Court should imply a cause of action. Brief for Respondent Amy 58. But that is a rare step in any circumstance. See, e.g., Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 164-165, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008) ; Musick, Peeler & Garrett v. Employers Ins. of Wausau, 508 U.S. 286, 291, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993) (noting that this Court's precedents "teach that the creation of new rights ought to be left to legislatures, not courts"). And it would do little to address the practical problems offenders would face in seeking contribution in any event, see Brief for United States 45-46, problems with which the victim fails to grapple.
The reality is that the victim's suggested approach would amount to holding each possessor of her images liable for the conduct of thousands of other independently acting possessors and distributors, *1726 with no legal or practical avenue for seeking contribution. That approach is so severe it might raise questions under the Excessive Fines Clause of the Eighth Amendment. To be sure, this Court has said that *456 "the Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government." Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 268, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). But while restitution under § 2259 is paid to a victim, it is imposed by the Government "at the culmination of a criminal proceeding and requires conviction of an underlying" crime, United States v. Bajakajian, 524 U.S. 321, 328, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). Thus, despite the differences between restitution and a traditional fine, restitution still implicates "the prosecutorial powers of government," Browning-Ferris, supra, at 275, 109 S.Ct. 2909. The primary goal of restitution is remedial or compensatory, cf. Bajakajian, supra, at 329, 118 S.Ct. 2028, but it also serves punitive purposes, see Pasquantino v. United States, 544 U.S. 349, 365, 125 S.Ct. 1766, 161 L.Ed.2d 619 (2005) ("The purpose of awarding restitution" under 18 U.S.C. § 3663A"is ... to mete out appropriate criminal punishment"); Kelly, 479 U.S., at 49, n. 10, 107 S.Ct. 353. That may be "sufficient to bring [it] within the purview of the Excessive Fines Clause," Bajakajian, supra, at 329, n. 4, 118 S.Ct. 2028. And there is a real question whether holding a single possessor liable for millions of dollars in losses collectively caused by thousands of independent actors might be excessive and disproportionate in these circumstances. These concerns offer further reason not to interpret the statute the way the victim suggests.
B
The contention that the victim's entire losses from the ongoing trade in her images were "suffered ... as a proximate result" of Paroline's offense for purposes of § 2259 must be rejected. But that does not mean the broader principles underlying the aggregate causation theories the Government and the victim cite are irrelevant to determining the proper outcome in cases like this. The cause of the victim's general losses is the trade in her images. And Paroline is a part of that cause, for he is one of those who viewed her images. While it is not possible to identify a discrete, readily definable *457 incremental loss he caused, it is indisputable that he was a part of the overall phenomenon that caused her general losses. Just as it undermines the purposes of tort law to turn away plaintiffs harmed by several wrongdoers, it would undermine the remedial and penological purposes of § 2259 to turn away victims in cases like this.
With respect to the statute's remedial purpose, there can be no question that it would produce anomalous results to say that no restitution is appropriate in these circumstances. It is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured. Brief for Petitioner 50; Brief for Respondent Wright 4 ; Brief for United States 23; Brief for Respondent Amy 60. Harms of this sort are a major reason why child pornography is outlawed. See Ferber, 458 U.S., at 759, 102 S.Ct. 3348. The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse-including Paroline-plays a part in sustaining and aggravating this tragedy. And there can be no doubt Congress wanted victims to receive restitution for harms like this. The law makes restitution "mandatory," § 2259(b)(4), for child-pornography offenses under Chapter 110, *1727 language that indicates Congress' clear intent that victims of child pornography be compensated by the perpetrators who contributed to their anguish. It would undermine this intent to apply the statute in a way that would render it a dead letter in child-pornography prosecutions of this type.
Denying restitution in cases like this would also be at odds with the penological purposes of § 2259's mandatory restitution scheme. In a sense, every viewing of child pornography is a repetition of the victim's abuse. One reason to make restitution mandatory for crimes like this is to impress upon offenders that their conduct produces concrete and devastating harms for real, identifiable victims. See *458 Kelly, supra, at 49, n. 10, 107 S.Ct. 353 ("Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused"). It would be inconsistent with this purpose to apply the statute in a way that leaves offenders with the mistaken impression that child-pornography possession (at least where the images are in wide circulation) is a victimless crime.
If the statute by its terms required a showing of strict but-for causation, these purposes would be beside the point. But the text of the statute is not so limited. Although Congress limited restitution to losses that are the "proximate result" of the defendant's offense, such unelaborated causal language by no means requires but-for causation by its terms. See Burrage, 571 U.S., at ----, 134 S.Ct., at 888 (courts need not read phrases like "results from" to require but-for causality where there is "textual or contextual" reason to conclude otherwise). As the authorities the Government and the victim cite show, the availability of alternative causal standards where circumstances warrant is, no less than the but-for test itself as a default, part of the background legal tradition against which Congress has legislated, cf. id., at ----, 134 S.Ct., at 889-890. It would be unacceptable to adopt a causal standard so strict that it would undermine congressional intent where neither the plain text of the statute nor legal tradition demands such an approach.
In this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses. The amount would not be severe in a case like this, given the nature of the causal connection between the conduct of a possessor like Paroline *459 and the entirety of the victim's general losses from the trade in her images, which are the product of the acts of thousands of offenders. It would not, however, be a token or nominal amount. The required restitution would be a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role. This would serve the twin goals of helping the victim achieve eventual restitution for all her child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims.
There remains the question of how district courts should go about determining the proper amount of restitution. At a general level of abstraction, a court must assess as best it can from available *1728 evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment. But that is neither unusual nor novel, either in the wider context of criminal sentencing or in the more specific domain of restitution. It is well recognized that district courts by necessity "exercise ... discretion in fashioning a restitution order." § 3664(a). Indeed, a district court is expressly authorized to conduct a similar inquiry where multiple defendants who have "contributed to the loss of a victim" appear before it. § 3664(h). In that case it may "apportion liability among the defendants to reflect the level of contribution to the victim's loss ... of each defendant." Ibid. Assessing an individual defendant's role in the causal process behind a child-pornography victim's losses does not involve a substantially different or greater exercise of discretion.
There are a variety of factors district courts might consider in determining a proper amount of restitution, and it is neither necessary nor appropriate to prescribe a precise *460 algorithm for determining the proper restitution amount at this point in the law's development. Doing so would unduly constrain the decisionmakers closest to the facts of any given case. But district courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images (excluding, of course, any remote losses like the hypothetical car accident described above, see supra, at 1721), then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses. These could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role. See Brief for United States 49.
These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense. The resulting amount fixed by the court would be deemed the amount of the victim's general losses that were the "proximate result of the offense" for purposes of § 2259, and thus the "full amount" of such losses that should be awarded. The court could then set an appropriate payment schedule in consideration of the defendant's financial means. See § 3664(f)(2).
The victim says this approach is untenable because her losses are "indivisible" in the sense that term is used by tort law, i.e., that there is no "reasonable basis for the factfinder *461 to determine ... the amount of damages separately caused by" any one offender's conduct. Restatement (Third) of Torts: Apportionment of Liability § 26, p. 320 (1999). The premise of her argument is that because it is in a sense a fiction to say Paroline caused $1,000 in losses, $10,000 in losses, or any other lesser amount, it is necessary to embrace the much greater fiction that Paroline caused all the victim's losses from the ongoing trade in her images. But that is a non *1729 sequitur. The Court is required to define a causal standard that effects the statute's purposes, not to apply tort-law concepts in a mechanical way in the criminal restitution context. Even if the victim's losses are fully "indivisible" in this sense (which is debatable), treating Paroline as a proximate cause of all the victim's losses-especially in the absence of a workable system of contribution-stretches the fiction of aggregate causation to its breaking point. Treating him as a cause of a smaller amount of the victim's general losses, taking account of his role in the overall causal process behind those losses, effects the statute's purposes; avoids the nonsensical result of turning away victims emptyhanded; and does so without sacrificing the need for proportionality in sentencing.
The victim also argues that this approach would consign her to "piecemeal" restitution and leave her to face "decades of litigation that might never lead to full recovery," Brief for Respondent Amy 57, which "would convert Congress's promise to child pornography victims into an empty gesture," id., at 66. But Congress has not promised victims full and swift restitution at all costs. To be sure, the statute states a strong restitutionary purpose; but that purpose cannot be twisted into a license to hold a defendant liable for an amount drastically out of proportion to his own individual causal relation to the victim's losses.
Furthermore, an approach of this sort better effects the need to impress upon defendants that their acts are not irrelevant or victimless. As the Government observes, Reply *462 Brief for United States 18, it would undermine this important purpose of criminal restitution if the victim simply collected her full losses from a handful of wealthy possessors and left the remainder to pay nothing because she had already fully collected. Of course the victim should someday collect restitution for all her child-pornography losses, but it makes sense to spread payment among a larger number of offenders in amounts more closely in proportion to their respective causal roles and their own circumstances so that more are made aware, through the concrete mechanism of restitution, of the impact of child-pornography possession on victims.
C
This approach is not without its difficulties. Restitution orders should represent "an application of law," not "a decisionmaker's caprice," Philip Morris USA v. Williams, 549 U.S. 346, 352, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007) (internal quotation marks omitted), and the approach articulated above involves discretion and estimation. But courts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims, but also that defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others. District courts routinely exercise wide discretion both in sentencing as a general matter and more specifically in fashioning restitution orders. There is no reason to believe they cannot apply the causal standard defined above in a reasonable manner without further detailed guidance at this stage in the law's elaboration. Based on its experience in prior cases of this kind, the Government-which, as noted above, see supra, at 1718 - 1719, bears the burden of proving the amount of the victim's losses, § 3664(e)-could also inform district courts of restitution sought and ordered in other cases.
* * *
*1730 *463 The Fifth Circuit's interpretation of the requirements of § 2259 was incorrect. The District Court likewise erred in requiring a strict showing of but-for causation. The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.
It is so ordered.
Chief Justice ROBERTS, with whom Justice SCALIA and Justice THOMAS join, dissenting.
I certainly agree with the Court that Amy deserves restitution, and that Congress-by making restitution mandatory for victims of child pornography-meant that she have it. Unfortunately, the restitution statute that Congress wrote for child pornography offenses makes it impossible to award that relief to Amy in this case. Instead of tailoring the statute to the unique harms caused by child pornography, Congress borrowed a generic restitution standard that makes restitution contingent on the Government's ability to prove, "by the preponderance of the evidence," "the amount of the loss sustained by a victim as a result of" the defendant's crime. 18 U.S.C. § 3664(e). When it comes to Paroline's crime-possession of two of Amy's images-it is not possible to do anything more than pick an arbitrary number for that "amount." And arbitrary is not good enough for the criminal law.
The Court attempts to design a more coherent restitution system, focusing on "the defendant's relative role in the causal process that underlies the victim's general losses." Ante, at 1727. But this inquiry, sensible as it may be, is not the one Congress adopted. After undertaking the inquiry that Congress did require, the District Court in this case concluded that the Government could not meet its statutory burden of proof. Before this Court, the Government all but concedes the point. See Brief for United States 25 ("it is *464 practically impossible to know whether [Amy's] losses would have been slightly lower if one were to subtract one defendant, or ten, or fifty"). I must regretfully dissent.
I
Section 2259(a) of Title 18 directs that a district court "shall order restitution for any offense under this chapter," which includes Paroline's offense of knowingly possessing child pornography in violation of section 2252. In case Congress's purpose were not clear from its use of "shall," section 2259(b)(4) then emphasizes that "[t]he issuance of a restitution order under this section is mandatory."
Section 2259(b)(1) spells out who may receive restitution, and for what. It provides that "[t]he order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to [ section 2259(b)(2) ]." The term " 'victim' " is defined as "the individual harmed as a result of a commission of a crime under this chapter." § 2259(c). And the term " 'full amount of the victim's losses' includes any costs incurred by the victim for ... medical services relating to physical, psychiatric, or psychological care"; "lost income"; and "any other losses suffered by the victim as a proximate result of the offense." §§ 2259(b)(3)(A), (D), (F).
Section 2259(b)(2) then describes how the district court must calculate restitution. It provides that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." Unlike section 2259, sections 3663A and 3664 were not designed specifically for child pornography *1731 offenses; they are part of the Mandatory Victims Restitution Act of 1996 and supply general restitution guidelines for many federal offenses. Most relevant here, section 3664(e) provides that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the *465 preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government."
A
As the Court explains, the statute allows restitution only for those losses that were the "proximate result" of Paroline's offense. See ante, at 1720 - 1722 (citing § 2259(b)(3) ). Contrary to Paroline's argument, the proximate cause requirement is easily satisfied in this case. It was readily foreseeable that Paroline's crime could cause Amy to suffer precisely the types of losses that she claims: future lost wages, costs for treatment and counseling, and attorney's fees and costs, all of which are eligible losses enumerated in section 2259(b)(3). There is a "direct relation" between those types of injuries and Paroline's "injurious conduct." Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). I therefore agree with the Court that if Paroline actually caused those losses, he also proximately caused them. See ante, at 1722.
The more pressing problem is the statutory requirement of actual causation. See Burrage v. United States, 571 U.S. ----, ----, 134 S.Ct. 881, 887-888, 187 L.Ed.2d 715 (2014) (the ordinary meaning of the term "results from" requires proof that the defendant's conduct was the "actual cause" of the injury). Here too the Court correctly holds that the statute precludes the restitution award sought by Amy and preferred by Justice SOTOMAYOR's dissent, which would hold Paroline responsible for Amy's entire loss. See ante, at 1724 - 1726; contra, post, at 1738 - 1743. Congress has authorized restitution only for "the amount of the loss sustained by a victim as a result of the offense." § 3664(e). We have interpreted virtually identical language, in the predecessor statute to section 3664, to require "restitution to be tied to the loss caused by the offense of conviction ." Hughey v. United States, 495 U.S. 411, 418, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) (citing 18 U.S.C. § 3580(a) (1982 ed.); emphasis added). That is, restitution *466 may not be imposed for losses caused by any other crime or any other defendant.[1]
Justice SOTOMAYOR's dissent dismisses section 3664(e), which is Congress's direct answer to the very question presented by this case, namely, how to resolve a "dispute as to the proper amount ... of restitution." Justice SOTOMAYOR thinks the answer to that question begins and ends with the statement in section 2259(b)(1) that the defendant must pay "the full amount of the victim's losses." See post, at 1735, 1735 - 1736, 1739 - 1740, 1742 - 1743. But losses from what? The answer is found in the rest of that sentence: "the full amount of the victim's losses as determined by the court pursuant to paragraph 2 ."
*1732 § 2259(b)(1) (emphasis added). "[P]aragraph 2," of course, instructs that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." § 2259(b)(2). And it is section 3664 that provides the statute's burden of proof and specifies that the defendant pay for those losses sustained "as a result of the offense"-that is, his offense. § 3664(e).
The offense of conviction here was Paroline's possession of two of Amy's images. No one suggests Paroline's crime actually caused Amy to suffer millions of dollars in losses, so the statute does not allow a court to award millions of dollars in restitution. Determining what amount the statute does allow-the amount of Amy's losses that Paroline's offense caused-is the real difficulty of this case. See ante, at 1722.
B
*467 Regrettably, Congress provided no mechanism for answering that question. If actual causation is to be determined using the traditional, but-for standard, then the Court acknowledges that "a showing of but-for causation cannot be made" in this case. Ante, at 1722. Amy would have incurred all of her lost wages and counseling costs even if Paroline had not viewed her images. The Government and Amy respond by offering an "aggregate" causation theory borrowed from tort law. But even if we apply this "legal fiction," ante, at 1724, and assume, for purposes of argument, that Paroline's crime contributed something to Amy's total losses, that suffices only to establish causation in fact. It is not sufficient to award restitution under the statute, which requires a further determination of the amount that Paroline must pay. He must pay "the full amount of the victim's losses," yes, but "as determined by" section 3664 -that is, the full amount of the losses he caused. The Government has the burden to establish that amount, and no one has suggested a plausible means for the Government to carry that burden.[2]
The problem stems from the nature of Amy's injury. As explained, section 3664 is a general statute designed to provide restitution for more common crimes, such as fraud and assault. The section 3664(e) standard will work just fine for most crime victims, because it will usually not be difficult to identify the harm caused by the defendant's offense. The dispute will usually just be over the amount of the victim's loss-for example, the value of lost assets or the cost of a night in the hospital.
Amy has a qualitatively different injury. Her loss, while undoubtedly genuine, is a result of the collective actions of a *468 huge number of people-beginning with her uncle who abused her and put her images on the Internet, to the distributors who make those images more widely available, to the possessors such as Paroline who view her images. The harm to Amy was produced over time, gradually, by tens of thousands of persons acting independently from one another.[3] She suffers in particular from her knowledge that her images are being viewed online by an unknown number of *1733 people, and from her fear that any person she meets might recognize her from having witnessed her abuse. App. 59-66. But Amy does not know who Paroline is. Id., at 295, n. 11. Nothing in the record comes close to establishing that Amy would have suffered less if Paroline had not possessed her images, let alone how much less. See Brief for United States 25. Amy's injury is indivisible, which means that Paroline's particular share of her losses is unknowable. And yet it is proof of Paroline's particular share that the statute requires.
By simply importing the generic restitution statute without accounting for the diffuse harm suffered by victims of child pornography, Congress set up a restitution system sure to fail in cases like this one. Perhaps a case with different facts, say, a single distributor and only a handful of possessors, would be susceptible of the proof the statute requires. But when tens of thousands of copies (or more) of Amy's images have changed hands all across the world for more than a decade, a demand for the Government to prove "the amount of the loss sustained by a victim as a result of the offense"-the offense before the court in any particular case-is a demand for the impossible. § 3664(e) (emphasis *469 added). When Congress conditioned restitution on the Government's meeting that burden of proof, it effectively precluded restitution in most cases involving possession or distribution of child pornography.
II
The District Court in Paroline's case found that the Government could not meet its statutory burden of proof. The Government does not really contest that holding here; it instead asks to be held to a less demanding standard. Having litigated this issue for years now in virtually every Circuit, the best the Government has come up with is to tell courts awarding restitution to look at what other courts have done. But that is not a workable guide, not least because courts have taken vastly different approaches to materially indistinguishable cases. According to the Government's lodging in this case, District Courts awarding less than Amy's full losses have imposed restitution orders varying from $50 to $530,000.[4] Restitution Awards for Amy Through December 11, 2013, Lodging of United States. How is a court supposed to use those figures as any sort of guidance? Pick the median figure? The mean? Something else?
More to the point, the Government's submission lacks any basis in law. That the first district courts confronted with Amy's case awarded $1,000, or $5,000, or $530,000, for no articulable reason, is not a legal basis for awarding one of those figures in Paroline's case. The statute requires proof of this defendant's harm done, not the going rate. And of course, as the Government acknowledges, its approach "doesn't work very well" in the first case brought by a particular victim. Tr. of Oral Arg. 24.
*470 The majority's proposal is to have a district court "assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." Ante, at 1727 - 1728. Even if that were a plausible way to design a restitution system for Amy's complex injury, there is no way around the fact that it is not the system that Congress created. The statute requires restitution to be *1734 based exclusively on the losses that resulted from the defendant's crime -not on the defendant's relative culpability. The majority's plan to situate Paroline along a spectrum of offenders who have contributed to Amy's harm will not assist a district court in calculating the amount of Amy's losses-the amount of her lost wages and counseling costs-that was caused by Paroline's crime (or that of any other defendant).
The Court is correct, of course, that awarding Amy no restitution would be contrary to Congress's remedial and penological purposes. See ante, at 1726 - 1727. But we have previously refused to allow "policy considerations"-including an "expansive declaration of purpose," and the need to "compensate victims for the full losses they suffered"-to deter us from reading virtually identical statutory language to require proof of the harm caused solely by the defendant's particular offense. Hughey, 495 U.S., at 420-421, 110 S.Ct. 1979.
Moreover, even the Court's "relative role in the causal process" approach to the statute, ante, at 1727, is unlikely to make Amy whole. To the extent that district courts do form a sort of consensus on how much to award, experience shows that the amount in any particular case will be quite small-the significant majority of defendants have been ordered to pay Amy $5,000 or less. Lodging of United States. This means that Amy will be stuck litigating for years to come. The Court acknowledges that Amy may end up with "piecemeal" restitution, yet responds simply that "Congress has not promised victims full and swift restitution at all costs." Ante, at 1729.
*471 Amy will fare no better if district courts consider the other factors suggested by the majority, including the number of defendants convicted of possessing Amy's images, a rough estimate of those likely to be convicted in the future, and an even rougher estimate of the total number of persons involved in her harm. Ante, at 1728. In the first place, only the last figure is relevant, because Paroline's relative significance can logically be measured only in light of everyone who contributed to Amy's injury-not just those who have been, or will be, caught and convicted. Even worse, to the extent it is possible to project the total number of persons who have viewed Amy's images, that number is tragically large, which means that restitution awards tied to it will lead to a pitiful recovery in every case. See Brief for Respondent Amy 65 (estimating Paroline's " 'market share' " of Amy's harm at 1/71,000, or $47). The majority says that courts should not impose "trivial restitution orders," ante, at 1728, but it is hard to see how a court fairly assessing this defendant's relative contribution could do anything else.
Nor can confidence in judicial discretion save the statute from arbitrary application. See ante, at 1727 - 1728, 1729 - 1730. It is true that district courts exercise substantial discretion in awarding restitution and imposing sentences in general. But they do not do so by mere instinct. Courts are instead guided by statutory standards: in the restitution context, a fair determination of the losses caused by the individual defendant under section 3664(e) ; in sentencing more generally, the detailed factors in section 3553(a). A contrary approach-one that asks district judges to impose restitution or other criminal punishment guided solely by their own intuitions regarding comparative fault-would undermine the requirement that every criminal defendant receive due process of law.
* * *
The Court's decision today means that Amy will not go home with nothing. But *1735 it would be a mistake for that salutary *472 outcome to lead readers to conclude that Amy has prevailed or that Congress has done justice for victims of child pornography. The statute as written allows no recovery; we ought to say so, and give Congress a chance to fix it.
I respectfully dissent.

In a case "where the loss is the product of the combined conduct of multiple offenders," post, at 1738 (SOTOMAYOR, J., dissenting), section 3664(h) provides that a court may "make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." As the Court notes, however, this provision applies only when multiple defendants are sentenced in the same proceeding, or charged under the same indictment. Ante, at 1727 - 1728; see also Brief for United States 43.

The correct amount is not the one favored by Justice SOTOMAYOR's dissent, which would hold Paroline liable for losses that he certainly did not cause, without any right to seek contribution from others who harmed Amy.

The gang assaults discussed by Justice SOTOMAYOR, post, at 1738 - 1739, are not a fair analogy. The gang members in those cases acted together, with a common plan, each one aiding and abetting the others in inflicting harm. But Paroline has never met or interacted with any, or virtually any, of the other persons who contributed to Amy's injury, and his possession offense did not aid or abet anyone.

Amy's uncle-the initial source of all of her injuries-was ordered to pay $6,325 in restitution, which only underscores how arbitrary the statute is when applied to most child pornography offenses.