**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3206

UNITED STATES OF AMERICA

v.

KYLE STEVENS,
                    Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:22-cr-00065-01)
U.S. District Judge: Honorable Richard G. Andrews
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 15, 2026
_____

Before: SHWARTZ, CHUNG, and AMBRO, <u>Circuit Judges</u>.

(Filed: January 16, 2026)

_____

OPINION[*]

**PER CURIAM**.

Kyle Stevens pleaded guilty to cyberstalking and making interstate threats and was

ordered to pay restitution. Stevens objected to the restitution order's inclusion of costs

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

the victim incurred following Stevens's arrest and costs related to the victim's out-of-state car registration. Because the District Court correctly overruled these objections, we will affirm.

## I

Stevens met the victim while both were University of Delaware students during the 2018-2019 academic year. In 2019, Stevens pleaded guilty to harassing the victim and was sentenced to probation. After his probation ended, he moved to Germany. While in Germany, from September 2021 through November 2021, Stevens sent the victim numerous threatening messages by various online means. For example, Stevens wrote: "I'm going to slaughter you. I'm going to string you up. I'm going to put you on hooks in the back of a freezer like a fucking cow," D.C. Dkt. No. 48 at 1, and threatened to put a "bullet in your head," D.C. id. at 9. He also threatened to harm her long into the future. For example, Stevens told the victim that he "could wait until you have kids, have a nice happy family, then—shotgun to the face." D.C. Dkt. No. 48 at 1.

Stevens was charged with two counts of cyberstalking, in violation of 18 U.S.C. § 2261A(2), and five counts of making interstate threats, in violation of 18 U.S.C. § 875(c). He was arrested in Germany in March 2023, extradited to the United States in May 2023, and detained. He pleaded guilty to cyberstalking and making interstate threats, and, in October 2024, was sentenced to 60 months' imprisonment and three years' supervised

release and ordered to pay $37,116.20 in restitution.[1]  The restitution amount included

$20,372 in additional rent the victim paid to live in a gated community apartment, as

opposed to graduate student housing, and $1,682.50 for a parking spot close to the

buildings where she studied, expenses she contracted for after Stevens's arrest but before

his sentencing.  The rent expenses ran from the beginning of Stevens's cyberstalking to

the end of the victim's lease, which expired three months after sentencing.  Similarly, the

parking expenses continued through June 2025, when her annual pass expired.  The

award also included $2,616.20 for registering her vehicle in a state other than Delaware[2]

to avoid having a public record of her Delaware address.

 The District Court overruled Stevens's objections to this award because (1) the

victim's post-arrest expenses were proximately caused by Stevens's offenses, and (2)

restitution for the victim's vehicle registration was appropriate regardless of whether she

violated Delaware's motor vehicle registration law.

 Stevens appeals.

---

[1] Restitution and incarceration are distinct criminal penalties.  Compare 18 U.S.C. § 2661(b) (setting forth maximum term of imprisonment for 18 U.S.C. § 2261A convictions) with id. § 2264 (setting forth restitution for § 2261A convictions).

[2] In 2022, the victim registered her vehicle in the state where her parents live rather than in Delaware, requiring her to pay $2,616.20 in vehicle registration taxes.

II[3]

A

The restitution statute for cyberstalking permits victims to recover "the full amount of [their] losses," 18 U.S.C. § 2264(b)(1), defined to include, "any other losses suffered by the victim as a proximate result of the offense," id. § 2264(b)(3)(G).[4] Losses are a "proximate result of the offense" if they "were a 'direct and foreseeable' result of the crime," United States v. Yung, 37 F.4th 70, 83 (3d Cir. 2022) (quoting Paroline v. United States, 572 U.S. 434, 449 (2014) (analyzing the term "proximate result" in 18 U.S.C. § 2259)), and includes expenses associated with the risks created by a defendant's criminal conduct, see Paroline, 572 U.S. at 444-45.

Here, the victim's post-arrest expenses were "losses suffered . . . as a proximate result of the offense." 18 U.S.C. § 2264(b)(3)(G). She incurred these expenses out of fear for her physical safety, which was a direct and foreseeable result of Stevens's repeated and open-ended threats to physically harm her. For example, in addition to threatening that he would harm her once she had children, Stevens threatened "payback,"

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Because Stevens contests the legality of his restitution order, and not the specific award, we review it de novo. See United States v. Yung, 37 F.4th 70, 75, 82-83 (3d Cir. 2022) (reviewing challenge to restitution order, including that losses suffered were not proximate result of the offense under 18 U.S.C. § 2264(b)(3)(G), de novo); United States v. Turner, 718 F.3d 226, 235 (3d Cir. 2013) (holding that this Court "review[s] the legality of a restitution order de novo and review[s] specific awards for abuse of discretion").

[4] This provision is "broad." Yung, 37 F.4th at 82-83; accord Lagos v. United States, 584 U.S. 577, 583-84 (2018) (describing 18 U.S.C. § 2264(b) as broad in contrast to the Mandatory Victims Restitution Act).

D.C. Dkt. No. 48 at 9, and that he could kill her "whenever I want," id. at 10. Those threats and his prior harassment conviction, which resulted in a probationary sentence, created a risk that this victim would fear for her physical safety even after he was arrested on the present charges.

Stevens argues that his detention rendered physical safety measures unnecessary and that, to the extent the victim's fear of physical danger does not align with the objective likelihood that he will be able to harm her, the proper remedy is counseling.[5] The statute, however, does not compensate victims solely for expenses that a court determines, in hindsight, to be strictly necessary. Instead, it asks only whether the steps the victim did take were direct and foreseeable results of the defendant's offense. Here, they were. Stevens's threats were broad and indefinite, promising he could reach the victim wherever she went and the police would not be able to stop him. Foreseeably, his threats instilled fear that did not immediately evaporate on his arrest; foreseeably, that fear caused the victim to take protective measures.

In the alternative, Stevens maintains the District Court should have adopted an alternative loss calculation that required the victim to break her lease and move out of her apartment. His argument lacks merit as the statute does not demand loss mitigation from victims or minimization from judges. Cf. 18 U.S.C. § 2264(4)(B) (prohibiting courts from declining restitution because of a defendant's economic circumstances or a victim's other sources of compensation).

---

[5] Stevens acknowledges that the statute specifically authorizes reimbursement for psychiatric or psychological care but these expenses were not part of the award here.

5

Because the victim could not have known before Stevens's October 2024 sentencing whether he would remain in jail[6] or receive another term of probation and given his open-ended threats, it was foreseeable that the victim could contract for expenses to ensure her safety before she knew that he would be incarcerated for several years, such as the additional rental and parking expenses. As such, these were "losses suffered . . . as a proximate result of the offense." 18 U.S.C. § 2264(b)(3)(G) and appropriately part of the restitution order.

B

The District Court's award of restitution for the victim's out-of-state vehicle registration tax was also proper.

Stevens concedes that the victim's registering her car out of state proximately resulted from his criminal offense, but he argues that her out-of-state registration violated Delaware law and that she should not be reimbursed for incurring such an expense.[7]

---

[6] Stevens's concern that he could face "liability in perpetuity," Appellant's Br. at 15, lacks merit as the restitution order here covers only expenses incurred before he was sentenced and for a period of less than a year following sentencing.

[7] Contrary to Stevens' assertion, United States v. Gonzalez, 647 F.3d 41, 66 (2d Cir. 2011), does not support his argument. There, the appellate court vacated a restitution order in the defendant's charity fraud scheme because the order assumed that the total amount each victim spent on charitable contributions to the defendant's charity, which he diverted for his own use, constituted that victim's loss. Id. at 66-67. Noting that some donors received value for their contributions such as food and drink and citing a portion of the federal tax code disallowing deductions for portions of a contribution attributable to the donor's own benefit, the court remanded for the district court to determine the amount each victim donated that constituted their loss so that they did not receive restitution in excess thereof. Id. (citing 26 C.F.R. § 1.170A-1(h)). Gonzalez did not vacate the restitution order because it ordered restitution in violation of state law. Rather, it vacated the restitution order because it ordered restitution that exceeded the victims' losses, which it used federal tax law to demonstrate. Accord United States v. Leahy, 438

Although his argument presents an interesting issue regarding whether restitution can be ordered to pay for an expense incurred for conduct that violates state law, we need not decide that issue in this case, as there is no showing that the vehicle registration activity here violated Delaware law.

To reach this conclusion, we must determine who is covered by Delaware's motor vehicle registration law. Delaware law requires that "every owner of a motor vehicle . . . within 60 days after taking up residence in [Delaware], apply to the Secretary and obtain registration for the vehicle." 21 Del. C. § 2102(a). Thus, the text covers motor vehicle owners who have "tak[en] up residence in" Delaware. There is no assertion that the victim does not own the subject vehicle, so our focus is on the meaning of "taking up residence." The motor vehicle statute does not define "residence," so Stevens relies on Delaware's tax code, 30 Del. C. § 1103(2), and its use of the word "resident," to argue that the victim is a Delaware resident subject to the registration requirement.

Stevens's reliance on the Delaware tax code is misplaced. First, the tax code has its own definitions, and Stevens has not provided any authority showing the tax code's definitions apply to the Delaware motor vehicle code, see 30 Del. C. § 1101 (providing that the terms of the chapter are similar to the federal tax laws). Second, even if the tax code provides guidance, Stevens ignores that Delaware's tax form instructions expressly provide an exception for full-time students like the victim.[8]

---

F.3d 328, 337 (3d Cir. 2006) (en banc) (concluding that, under a plain reading of 18 U.S.C. § 3664, a restitution ordered may not exceed the "the full amount of loss").

[8] See Delaware Individual Income Tax Return RESIDENT at 2, revenuefiles.delaware.gov/2022/PIT-RES_TY22_2022-02_Instructions.pdf (reciting the

7

Because there is no showing that the victim is subject to Delaware's motor vehicle registration requirement, repaying her for the registration tax does not compensate her for an act that violates state law.

III

For the foregoing reasons, we will affirm.

---

definition of resident individual and stating that, "Full-Time Students with a legal residence in another state remain legal residents of that state unless they exhibit intentions to make Delaware their permanent residence").