dissenting.
{¶ 32} Respectfully, I dissent.
*287 {¶ 33} Arlie Risner hunted illegally on private property and killed ¿ 20-point buck. State wildlife officers recovered deer entrails, organs, and blood at the scene and identified and seized the deer’s antlers from a taxidermist and its meat from a butcher. The investigation linked Risner to the crime, and the Ohio Department of Natural Resources (“ODNR”) elected to prosecute him for hunting without permission in violation of R.C. 1533.17(A). Risner pleaded no contest to that charge, and the Norwalk Municipal Court found him guilty, imposed a $200 fine, ordered $90 in restitution and a one-year suspension of his hunting license, and awarded the antlers and the meat to the state. ODNR subsequently assessed Risner an additional $27,851.33 in restitution — the value of the animal, notwithstanding the fact that the state had recovered the deer itself— and revoked Risner’s hunting and fishing licenses until he makes that payment.
{¶ 34} Risner filed this declaratory judgment action in common pleas court asserting that the assessment was illegal and unconstitutional. ODNR counterclaimed for the value of the deer. The trial court granted Risner’s motion for summary judgment, finding that ODNR could not seek the restitution value of the deer when it had already been awarded possession of the deer meat and the antlers in the criminal proceeding.
{¶ 35} The court of appeals reversed and ruled that because “Mr. Risner has no title to or ownership interest in the lawfully seized wild animal parts, it is illogical to construe R.C. 1531.201(B) to require ODNR to choose between possession of the unlawfully taken parts or restitution for the unlawfully taken deer.” 2013-Ohio-5902, 8 N.E.3d 330, ¶ 22 (6th Dist.). Nonetheless, the appellate court noted ODNR’s concession that “the forfeited parts of the animal do have some monetary value” and stated that its “decision should not be construed to preclude Arlie Risner from arguing for an offset against the additional restitution value at a hearing on this matter.” Id. at ¶ 25.
{¶ 36} In this court, the majority concludes that R.C. 1531.201 authorizes ODNR to seek the $27,851.33 restitution value of the animal regardless of the fact that the state has possession of the animal, explaining that “ODNR has the authority to file a civil action to recover civil restitution for the deer notwithstanding ODNR having been awarded possession of the deer,” majority opinion at ¶ 24, and that “ODNR does not have discretion not to impose the additional civil restitution required by R.C. 1531.201(C),” id. at ¶ 16. The majority interprets R.C. 1531.201 to mandate that ODNR recover both possession of the animal and its restitution value.
{¶ 37} The majority misinterprets the statute. {¶ 38} R.C. 1531.201(B) states that ODNR “may bring a civil action to recover possession of or the restitution value of any wild animal held, taken, bought, sold, or possessed” in violation of state wildlife laws. (Emphasis added.) The statute *288 is written using the disjunctive conjunction “or,” not the connective conjunction “and.” It is plain and unambiguous — the state may recover either possession of the animal or its restitution value. The General Assembly could have authorized ODNR to recover both possession of the animal and the restitution value of the animal by using the conjunction “and,” but it did not do so. And the minimum restitution value for an antlered white-tailed deer is established pursuant to administrative rule as $500, not $27,851.33. R.C. 1531.201(B); Ohio Adm.Code 1501:31-16-01(B)(14).
{¶ 39} Similarly, the legislature could have authorized ODNR to assess a civil penalty, as it has authorized the director of agriculture to do in connection with laws regulating the breeding and retail sale of dogs, R.C. 956.13, and the keeping of dangerous wild animals, R.C. 935.24. It also has recently authorized civil penalties to protect natural resources that, like wildlife, the state holds in trust. See, e.g., R.C. 1511.11 (civil penalty for applying manure to fields in a manner that could result in its runoff into the western basin of Ohio); R.C. 1520.03 (civil penalty for diverting water); R.C. 1506.09 (civil penalty for violation of the coastal management program). But the statutes that regulate hunting do not authorize the imposition of civil penalties.
{¶ 40} In contrast to those provisions, which expressly authorize the assessment of a civil penalty, the General Assembly used the word “restitution” in R.C. 1531.201. Black’s Law Dictionary 1339 (8th Ed.2004) defines “restitution” to mean the “[rjeturn or restoration of some specific thing to its rightful owner or status” or “[c]ompensation for loss; esp., full or partial compensation paid by a criminal to a victim, not awarded in a civil trial for tort, but ordered as part of a criminal sentence or as a condition of probation.” As we explained in Cincinnati v. Cincinnati Dist. Council 51, 35 Ohio St.2d 197, 208, 299 N.E.2d 686 (1973), “modern usage of that term includes restoration to its rightful owner and also compensation for loss or injury caused to another.” Thus, restitution is not equivalent to a civil penalty.
{¶ 41} In State v. Lalain, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, ¶ 27, we considered the limits of a sentencing court’s discretion in ordering restitution. There, after Daniel Lalain had stolen intellectual property from his employer, Aero-Instruments, it spent $55,456 to conduct an internal investigation and an additional $7,665 to determine the value of the stolen property. Police officers executed a search warrant at Lalain’s home and recovered all the stolen property. Lalain pleaded guilty to theft of property valued at $500 or more but less than $5,000, and at sentencing, the trial court ordered restitution in the amount of $63,121 to Aero-Instruments for the costs of the internal investigation and the outside audit. The court of appeals affirmed, and we accepted review to *289 determine whether restitution was limited to the property value corresponding to the degree of the theft conviction.
{¶ 42} We recognized that a trial court has statutory authority to impose restitution as part of a sentence in order to compensate the victim for economic loss. Id. at ¶ 20. However, we clarified that the amount of “restitution may not exceed the amount of economic loss suffered as a direct and proximate result of the commission of the offense,” id. at ¶ 23, and reversed the award of restitution, because it was an award of the “consequential costs incurred subsequent to the theft to value the property that had been taken from and later returned to AeroInstruments,” not the actual economic loss suffered as a direct and proximate result of the commission of the offense, id. at ¶ 25.
{¶ 43} Similarly here, ODNR has already recovered the animal itself. It cannot recover more in restitution than its economic loss.
{¶ 44} Restitution serves rehabilitative goals in criminal sentencing; as the United States Supreme Court recently explained in Paroline v. United States, — U.S. — , 134 S.Ct. 1710, 188 L.Ed.2d 714 (2014), “ ‘it forces the defendant to confront, in concrete terms, the harm his actions have caused.’ ” Id. at 1727, quoting Kelly v. Robinson, 479 U.S. 36, 49, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), fn. 10. Thus, the purpose of restitution “is not to punish the defendant, but to make the victim whole again by restoring to it the value of the losses it suffered.” United States v. Innarelli, 524 F.3d 286, 293 (1st Cir.2008). For this reason, and in contrast to a fine or civil penalty, restitution is “calculated by reference to the amount of harm the offender has caused.” Kelly v. Robinson, 479 U.S. 36, 52, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).
{¶ 45} There is no indication that the General Assembly intended to deviate from these legal principles or to permit double recovery in cases of this type. Tellingly, other statutes governing restitution limit the victim to a single recovery of the actual economic loss. See, e.g., R.C. 2929.18(A)(1) (providing for financial sanctions for felony offenses, including restitution, and stating, “All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender”); R.C. 2929.28(A)(1) (same for misdemeanor sentences); R.C. 3770.99(A) (providing for “restitution to the state lottery commission of any moneys erroneously paid as a lottery prize award” to a person prohibited from claiming that award); R.C. 163.03 (requiring “restitution or reimbursement for any actual damage” caused by a state agency entering private property for the purpose of making a survey or other activities taken when appropriating property); R.C. 4725.53(B) (permitting the Ohio Optical Dispensers Board to discipline an optician by ordering the licensee to make “restitution to a person who has suffered a financial loss”).
*290 {¶ 46} ODNR reads R.C. 1531.201(C)(1) as imposing a mandatory duty to collect the full restitution value of the deer in addition to recovering the animal itself. But the purpose of that statute is to establish the restitution value of an animal in cases in which there is a criminal conviction and the court orders a sentence in a criminal court:
[A] person who is convicted of a violation of this chapter or Chapter 1533. of the Revised Code or a division rule governing the holding, taking, buying, sale, or possession of an antlered white-tailed deer with a gross score of more than one hundred twenty-five inches also shall pay an additional restitution value that is calculated using the following formula:
Additional restitution value = ((gross score - 100)2 x $1.65).
The statute does not require ODNR to assess and collect the additional restitution value in a civil action; rather, assessing restitution is a matter for the court imposing sentence for a conviction. In fact, R.C. 1533.99(G) states,
A court that imposes sentence for a violation * * * may require the person who is convicted of or pleads guilty to the offense, in addition to any fine, term of imprisonment, seizure, and forfeiture imposed, to make restitution for the minimum value of the wild animal or animals illegally held, taken, or possessed as established under section 1531.201 of the Revised Code.
R.C. 1531.99(E) is nearly identical. And here, the sentencing court had already ordered restitution and the forfeiture of the animal in the criminal proceeding. Thus, ODNR’s imposing the additional restitution value is an additional penalty. See Paroline, — U.S. — , 134 S.Ct. at 1725-1726, 188 L.Ed.2d 714 (explaining that an award of restitution disconnected from the harm the offender actually caused could bring the award within the purview of the Eighth Amendment).
{¶ 47} Permitting ODNR to obtain restitution in an amount significantly greater than the state’s economic loss raises constitutional questions. Notably, the additional restitution value of $27,851.33 applies solely as the consequence of a conviction. R.C. 1531.201(B) and (C)(1). ODNR argues that permitting both recovery of the animal and an award of its full restitution value is central to the core purpose of R.C. 1531.201 to deter poaching by increasing the penalty to make sure the punishment fits the crime. Thus, ODNR itself considers the $27,851.33 restitution value to be a penalty.
*291 McKown & McKown Co., L.P.A., Gordon M. Eyster, and Kathryn M. Eyster, for appellant.
Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, Samuel C. Peterson, Deputy Solicitor, and Daniel J. Martin and Nichole Candelora-Norman, Assistant Attorneys General, for appellee.
{¶ 48} But ODNR’s position is not well taken, because a statute seeking to impose a second punishment for an offense in a subsequent proceeding violates the Double Jeopardy Clause. See, e.g., Hudson v. United States, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); State v. Raber, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 24. And if the award of restitution is punishment for a crime, then it must be imposed by a court at sentencing, not by an executive agency in a separate proceeding. See Woods v. Telb, 89 Ohio St.3d 504, 512, 733 N.E.2d 1103 (2000) (explaining that because the separation-of-powers doctrine precludes the executive branch of government from impeding the judiciary’s imposition of a sentence, the Adult Parole Authority may impose postreleasecontrol sanctions only if a trial court incorporates postrelease control into its original sentence).
{¶ 49} The loss suffered by the state in this case is the deer, and the state received it in the prior judicial proceeding. In its brief, ODNR asserts that “trophy-size antlers could ‘easily net’ $20,000 on the black market,” and in an affidavit presented in support of ODNR’s motion for summary judgment, Jeffrey B. Collingwood, one of ODNR’s State Wildlife Investigators, averred that the animal Risner took “would be a highly coveted deer for a hunter particularly because of the unusually large and unique antler size.” ODNR, however, has recovered the antlers that made the deer so valuable, as well as the rest of the animal, and nothing in this record justifies an additional recovery of more than $27,000.
{¶ 50} The state is not permitted a double recovery. Accordingly, I would reverse the judgment of the court of appeals and reinstate the trial court order entering summary judgment for Risner.
Lanzinger and O’Neill, JJ., concur in the foregoing opinion.