STATE of Wisconsin, Plaintiff-Respondent,

v.

David L. TARLO, Defendant-Appellant.

Court of Appeals

*No. 2015AP1502–CR. Submitted on briefs May 11, 2016.
—Decided October 5, 2016.*

2016 WI App 81

(Also reported in 887 N.W.2d 898.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John R. Breffeilh*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel J. O'Brien*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Reilly, P.J., Gundrum and Hagedorn, JJ.

¶ 1. GUNDRUM, J. David Tarlo challenges the circuit court's award of restitution to the mother of a victim of child pornography. He argues the court erred in concluding the mother met her burden of proving that the claimed loss was the result of his criminal

conduct. We agree and reverse the portion of the judgment requiring restitution.

*Background*

¶ 2. Tarlo was charged with five counts of possession of child pornography in relation to five images found on his computer. According to the criminal complaint, a Wisconsin Department of Justice analyst concluded most of the images were viewed in November and December 2009 and March 2011. Tarlo pled guilty to one of the counts with the other counts being dismissed but read in at sentencing.

¶ 3. The mother of a child alleged to be in one of the images on Tarlo's computer sought $60,000[1] in restitution from Tarlo for lost income. She claimed at the restitution hearing before a court commissioner in this case that she was deprived of that amount in income support due to her husband's earlier arrest and ultimate incarceration for producing child pornography, including pornographic images of her daughter. The mother provided testimony from which the court commissioner concluded that one of the images possessed by Tarlo was an image of the daughter that was produced by her husband. The State argued that the restitution request was appropriate because Tarlo had viewed and possessed the image.

¶ 4. The court commissioner ultimately recommended Tarlo pay restitution of $10,000. It reached this amount by dividing the $60,000 requested by six, which is the total number of people that the mother testified had been caught possessing a pornographic image of the daughter. The circuit court subsequently

---

[1] The mother sought the money in Canadian dollars. She and her daughter live in Canada.

adopted this recommendation as its own. Tarlo moved for reconsideration, which was denied. He appeals.

### Discussion

¶ 5. Tarlo argues the circuit court erroneously exercised its discretion in ordering him to pay $10,000 because "the family's lost income is not related to [his] possession" of the daughter's image. He asserts the mother failed to meet her burden of demonstrating that the lost income support she sustained was a result of Tarlo's crime of viewing and possessing her daughter's image.[2] Based upon the evidence presented at the restitution hearing, we must agree.

¶ 6. At a restitution hearing, "[t]he burden of demonstrating by the preponderance of the evidence the amount of loss sustained by a victim *as a result of a crime considered at sentencing* is on the victim." WIS. STAT. § 973.20(14)(a) (2013–14)[3] (emphasis added). As Tarlo points out, ' "[b]efore restitution can be ordered' . . . there must be 'a causal nexus' between the 'crime considered at sentencing' and the damage." *State v. Rash*, 2003 WI App 32, ¶ 6, 260 Wis. 2d 369,

---

[2] Tarlo also argues restitution is inappropriate because the evidence presented at the restitution hearing failed to prove that any of the pornographic images on his computer were actually an image of the mother's daughter. Because we conclude the evidence otherwise failed to establish that the mother's claimed loss was the result of Tarlo's conduct, we need not address that issue. *See State v. Davis*, 2011 WI App 147, ¶ 15, 337 Wis. 2d 688, 808 N.W.2d 130 (we need not address other issues if one is dispositive). We assume for the sake of this decision that one of the images on Tarlo's computer was an image of the daughter.

[3] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

659 N.W.2d 189 (citation omitted). "In proving causation, a victim must show that the defendant's criminal activity was a 'substantial factor' in causing damage. The defendant's actions must be the 'precipitating cause of the injury' and the harm must have resulted from 'the natural consequence[s] of the actions.' " *Id.* (alteration in original; citation omitted). "Circuit courts have discretion . . . in determining whether the defendant's criminal activity was a substantial factor in causing any expenses for which restitution is claimed." *State v. Johnson*, 2002 WI App 166, ¶ 7, 256 Wis. 2d 871, 649 N.W.2d 284 (citing *State v. Canady*, 2000 WI App 87, ¶¶ 6, 12, 234 Wis. 2d 261, 610 N.W.2d 147). A discretionary decision "should only be disturbed when there has been an erroneous exercise of that discretion." *State v. Madlock*, 230 Wis. 2d 324, 329, 602 N.W.2d 104 (Ct. App. 1999). A court erroneously exercises its discretion if it exercises its discretion "under an erroneous view of the law," *id.*, or fails to "logically interpret[] the facts," *Johnson*, 256 Wis. 2d 871, ¶ 7.

¶ 7. While we are to "construe the restitution statute broadly and liberally in order to allow victims to recover their losses," those losses must still be shown to be *"as a result of a defendant's criminal conduct." State v. Longmire*, 2004 WI App 90, ¶ 11, 272 Wis. 2d 759, 681 N.W.2d 534 (citation omitted). It is a "bedrock principle" that restitution should reflect, and a defendant should be made liable for, "the consequences of the defendant's own conduct," "not the conduct of others." *Paroline v. United States*, 134 S. Ct. 1710, 1725, 1729 (2014).

¶ 8. Here, the evidence presented at the restitution hearing establishes only financial losses incurred as a result of the earlier conduct of the mother's husband in producing the child pornography; it does not establish that any of the losses resulted from Tarlo's criminal conduct, or even general trafficking of the daughter's image over the Internet.[4] The mother presented evidence that she incurred the $60,000 of lost income support as a result of her husband's arrest and incarceration for his production of child pornography. Of that amount, approximately $45,000 was lost due to her husband's lost employment and $15,000 was lost due to her own lost employment because, as the court commissioner found, the mother "needed to quit her jobs to supervise her children and transport them to their treatment sessions." The court commissioner noted, "In reality, this amount could be much higher, but the victims are only seeking $60,000." The amount could have been much higher because, according to the mother's testimony, $60,000 was the amount of loss incurred "every year" since 2010, when it was discovered her husband produced the child pornography.

¶ 9. According to the complaint,[5] most of the images of child pornography on Tarlo's computer were viewed in November and December 2009 and in March 2011.[6] The mother indicated at the restitution hearing, and the record otherwise supports, that she first

---

[4] *See* discussion of *Paroline v. United States*, 134 S. Ct. 1710 (2014), *infra* ¶¶ 13–16.

[5] At the plea hearing, Tarlo agreed the circuit court could rely upon the facts set forth in the complaint as establishing a factual basis for his plea.

[6] Even assuming, as we do, that one of the images on Tarlo's computer was of the daughter, the State identifies no

learned of the viewing and possession of her daughter's image—by Tarlo and five other individuals—at some point in approximately the year leading up to the June 2, 2014 restitution hearing.[7] However, even if the court had awarded the mother the $10,000 it did in relation to lost income for that year immediately preceding the restitution hearing, the evidence nonetheless still failed to establish a "causal nexus" between the lost income and the viewing and possession of the image. The evidence established that the income was lost due to the husband's earlier production of child pornography and related arrest and incarceration; no evidence was presented from which the court could reasonably infer that the viewing and possession of the daughter's image by Tarlo or others caused any of the income loss for which the mother sought restitution. *See* Wis. Stat. § 973.20(14)(a).

¶ 10. The mother also testified she and her children had participated in individual counseling as a result of her husband's production of the child pornography; but she made no request for restitution related to any counseling, provided no testimony or other evidence of any counseling costs, and indicated that the counseling was provided at no cost to her through "crime victim assistance" in relation to her husband's crime. When asked by the court commissioner if she anticipated any future expenses related to Tarlo's

---

evidence in the record, and we are unable to find any, indicating when Tarlo viewed or possessed that particular image.

[7] The record indicates law enforcement did not learn of Tarlo's viewing and possession of child pornography until April 2013. Since the mother testified she was notified by "the United States" of Tarlo's and others' viewing and possession of her daughter's image in "about the last year" prior to the June 2, 2014 restitution hearing, she presumably first learned of Tarlo's crime in or after April 2013.

crime, such as "other expenses for treatment or therapy that you think is not going to be covered," she could only indicate that "[t]here could be" other expenses, but provided no suggested financial costs, past or present, upon which any treatment-related restitution award could be based.

¶ 11. The mother did testify her daughter is revictimized every time an individual views her image and she (the mother) feels revictimized every time she is notified of an individual viewing the image. The mother's and daughter's revictimization cannot be doubted. *See Paroline*, 134 S. Ct. at 1727 ("[E]very viewing of child pornography is a repetition of the victim's abuse."). That said, evidence still needed to be presented from which the circuit court could conclude that financial losses claimed by the mother resulted from the viewing and possession of her daughter's image—and not just the earlier criminal conduct of her husband. No such evidence was presented at the restitution hearing.

¶ 12. With virtually no analysis or analogizing of the case to this one, the State provides large block quotes from *Paroline* to support its assertion that "[f]ederal case law supports the concept of holding consumers of child pornography liable for restitution to victims even though the pornography is created elsewhere and long ago." While that assertion is generally correct, *Paroline* does not aid the State here.

¶ 13. The uncle of the victim in *Paroline* sexually abused the victim when she was eight and nine years old in order to produce child pornography. *Id.* at 1717. He was convicted of the offense and required to pay $6000 in restitution. *Id.* The victim participated in therapy in 1998 and 1999 until the therapist determined she was "back to normal." *Id.* The victim suf-

341

fered "a major blow to her recovery," however, when she learned at age seventeen "that images of her abuse were being trafficked on the Internet." *Id.* The possessors of her images "easily number[ed] in the thousands," and the knowledge that her images "were circulated far and wide" renewed her trauma and "made it difficult for her to recover from her abuse." *Id.*

¶ 14. Paroline later was convicted in relation to possessing between 150 and 300 images of child pornography, including two which depicted the victim. *Id.* at 1717–18. The victim sought restitution under 18 U.S.C. § 2259 (1996) in the amount of nearly $3 million in lost income and $500,000 in future treatment and counseling expenses. *Paroline*, 134 S. Ct. at 1718. The district court declined to award restitution, holding that the government failed to establish losses proximately caused by Paroline's crime. *Id.* On appeal, the Supreme Court struggled with the question of causation and how courts could properly award restitution in cases where "a particular defendant . . . is one of thousands who have possessed and will in the future possess the victim's images." *Id.* at 1722. The Court continued, "In determining the amount of general losses a defendant must pay under § 2259 the ultimate question is how much of these losses were the 'proximate result,' § 2259(b)(3)(F), of that individual's offense." *Paroline*, 134 S. Ct. at 1722. The Court discussed factors federal district courts should consider, as "rough guideposts," in determining an appropriate amount of restitution, and it remanded the matter back to the district court. *Id.* at 1728, 1730.

¶ 15. Ultimately, under the federal statute at issue in that case, *Paroline* allows a victim in the "special context" of child pornography to recover restitution from a possessor of the pornographic image even

though "none of [the victim's] claimed losses flowed from any specific knowledge about [the possessor] or his offense conduct," so long as the victim's losses are shown to have been the result of trafficking in the image in general. *Id.* at 1718, 1726–28. In *Paroline*, "the victim's costs of treatment and lost income result[ed] from the trauma of knowing that images of her abuse [were] being viewed over and over," *id.* at 1722, and the evidence discussed by the Court indicates the restitution sought by the victim related to the "major blow to her recovery" which occurred when she learned at age seventeen that her image was being viewed on the Internet, by individuals such as Paroline. *Id.* at 1717–18, 1722. By contrast, in the case before us, there simply was no evidence presented of income lost or treatment costs incurred, or of income that will be lost or costs that will be incurred, as a result of Tarlo or others viewing and possessing the daughter's image.

¶ 16. Significantly, the *Paroline* Court noted that a victim's "losses sustained as a result of the initial physical abuse" are to be "disaggregat[ed]" from "aggregate losses, including the costs of psychiatric treatment and lost income, that stem from the ongoing traffic in her images as a whole." *Id.* at 1722. Again, here the mother testified only as to the loss of income resulting from her husband's initial abuse of her children, including her daughter, and provided no testimony of losses "stem[ming] from" Tarlo or others viewing and possessing her daughter's image. Her testimony only supports the conclusion that she would have incurred all the financial losses to which she testified at the restitution hearing even if no one had ever viewed or possessed an image of her daughter via computer.[8]

---

[8] The mother testified that the children had *stopped* going

¶ 17. Nevertheless, the State argues that Tarlo's conduct was a substantial factor in the loss of both the mother's and her husband's income. According to the State, this causal nexus was established because

> Tarlo's role as a consumer [of the child pornography] *retrospectively encouraged* the creation and distribution of the victim's sexually explicit images by [the mother's] husband who believed there would be consumers like Tarlo out there, so he created the images and put them on the internet for those consumers to enjoy. (Emphasis added.)

The court commissioner, and by adoption the circuit court, rested its decision on similar reasoning, which we find flawed. It may be that when he produced the child pornography, the husband believed, based on his *prior* Internet experience, that the images eventually would be circulated on the Internet and viewed by other persons. It may also be that this belief contributed to his decision to produce the child pornography, which production resulted in his arrest, imprisonment, and loss of employment. It cannot be said, however, that Tarlo's actions, which occurred *after* the husband produced the pornography, caused the husband to

---

to counseling "over a year" prior to the June 2, 2014 restitution hearing, which was around the same time the mother first learned of Tarlo and others viewing and possessing the daughter's image. *See supra* ¶ 9. Thus, we see no factual connection in the record between the counseling in which the victim participated and any trafficking of her image on the Internet generally, much less the viewing and possession of it by Tarlo. While the mother also testified that she began going to counseling around the time the children stopped, her testimony did not suggest she began counseling because of Tarlo or others viewing and possessing her daughter's image, received counseling for any reason other than her husband's crime, or incurred any counseling costs.

produce it. Indeed, there is no evidence whatsoever to suggest the husband would not have produced the pornography if Tarlo or the others had not subsequently viewed and possessed it.

¶ 18. The restitution statute places on the victim the burden of proving that any losses sustained were "a result of a crime considered at sentencing." WIS. STAT. § 973.20(14)(a). A "result" of a crime follows from the commission of the crime; the result does not precede the crime. *See Result,* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "result" as "[a] consequence, effect, or conclusion," "[t]hat which is achieved, brought about, or obtained, esp. by purposeful action," and "[t]o be a physical, logical, or legal consequence; to proceed as an outcome or conclusion"); *Result,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993) (defining "result" as "to proceed, spring, or arise as a consequence, effect, or conclusion"); *see also Paroline,* 134 S. Ct. at 1719 ("[T]o say one event proximately caused another . . . means the *former* event caused the *latter.*" (emphasis added)).

¶ 19. Child pornography is a scourge upon children, families, and our nation. Nevertheless, courts still must make decisions based upon evidence presented. In this case, the mother failed to meet her burden of proving she incurred any losses as a result of Tarlo's conduct; she only presented evidence she incurred losses as a result of her husband's conduct of producing the child pornography. Accordingly, the restitution order was in error, and we remand this matter to the circuit court to enter an amended judgment of conviction vacating the restitution award.[9]

---

[9] The State requests that if we reverse, as we do, we send this matter back to the circuit court for a new restitution

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

hearing. However, a full and fair restitution hearing has already taken place, in which the mother had the unrestricted opportunity to, and in fact did, present evidence of her losses. In addition, she was assisted by the State and court commissioner in the presentation of that testimony. We further note that "[d]ouble jeopardy protection applies to restitution orders," *State v. Greene*, 2008 WI App 100, ¶ 15, 313 Wis. 2d 211, 756 N.W.2d 411, and thus, without deciding the question, we observe that the legal propriety of ordering a "do-over," as Tarlo calls it, is questionable.