COURT OF APPEALS
DECISION
DATED AND FILED

February 4, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP970-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CF1176

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

 V.

JOEL A. HINRICHS,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: JOHN D. HYLAND, Judge. *Affirmed*.

Before Kloppenburg, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State of Wisconsin appeals a circuit court order denying the State's request for restitution. We conclude that, based on the facts agreed to by the State during the circuit court proceedings, the court properly determined that restitution is not permitted under controlling Wisconsin law, and that the court therefore properly denied the State's restitution request without an evidentiary hearing. Accordingly, we affirm.

## BACKGROUND

¶2 Following a "cyber tip" from the National Center for Missing and Exploited Children that Hinrichs had accessed child pornography, police executed a search warrant at Hinrichs' home. Police recovered an iPod on which Hinrichs admitted that he had stored more than 40 images of child pornography. Included in these images were 10 videos of prepubescent or pubescent girls engaged in sexual activity. Based on these images, the State charged Hinrichs with 10 counts of possession of child pornography and Hinrichs ultimately pleaded guilty to one count, with the remaining nine counts read in. All counts were alleged to have occurred in 2018.

¶3 The circuit court sentenced Hinrichs to three years of initial confinement and seven years of extended supervision. At sentencing, the State indicated that it would be requesting restitution, and a restitution hearing was scheduled for February 1, 2019.

¶4 Prior to or at the February 1 restitution hearing, the State filed a proposed order granting restitution, which indicates only the amounts requested by

the claimants[1] ($5,000 each) and the payees.  The State also provided to Hinrichs, but not to the circuit court, documents in support of the State's request for restitution.[2]   Based on the parties' representations in the circuit court, these documents included psychological evaluations of the five claimants, victim impact statements, letters from some of the claimants' family members, and orders from two federal district courts awarding restitution.  The documents also included legal briefs from two out-of-state attorneys, which relied on the rationale of ***Paroline v. United States***, 572 U.S. 434 (2014).  As discussed in more detail below, ***Paroline*** concludes that, in the context of child pornography cases and based on federal law, victims may recover restitution even when the defendant is one of thousands who viewed the images and the victims do not know that the defendant specifically possessed the pornographic images in which they appear.  ***Id.*** at 458-59.

¶5     Prior to the February 1 restitution hearing, Hinrichs filed a motion to "strike" both the State's restitution request and the evidentiary hearing.  Hinrichs argued that ***Paroline*** is not controlling because it is based on federal law and that, under Wisconsin law, the State's restitution request must be denied because all of the damages identified in the State's documents in support of restitution pre-dated Hinrichs' 2018 offense date.  Hinrichs also noted that the documents showed that

---

[1] The parties dispute whether the record establishes that the five claimants appear in the pornographic images that Hinrichs possessed.  Because we conclude that the State has otherwise failed to establish that restitution is permitted under Wisconsin law, we need not address this issue.  *See* ***State v. Davis***, 2011 WI App 147, ¶15, 337 Wis. 2d 688, 808 N.W.2d 130 (we need not address other issues if one is dispositive).  In light of this dispute, we refer to the five individuals as "claimants" rather than as "victims."

[2] These documents are not part of the appellate record.  On appeal, the State makes various arguments regarding the fact that these documents were not before the circuit court when it issued its order denying the State's restitution request.  We provide further background and address the State's arguments on this issue in the discussion section below.

one of the claimants had not incurred any damages because she was unaware of the existence of the pornographic images.

¶6 At the February 1 restitution hearing, the State agreed that the hearing would address legal arguments only and that, depending on the circuit court's determinations with respect to the legal issues, an evidentiary hearing may or may not be held at a later date. The State agreed that Hinrichs' motion accurately characterized the documents the State had provided to Hinrichs in support of the State's restitution request. The State declined to provide the documents to the court at the hearing, stating that "none of that matters for this portion" because the question was one of law. The court accepted the dates of the pertinent documents set forth in Hinrichs' motion as accurate, without objection from the State.

¶7 The circuit court subsequently issued a written decision in which it granted Hinrichs' motion to strike restitution and denied the State's request for restitution. The court determined that *Paroline* is inapplicable because its conclusions are based on federal law. The court further concluded that Wisconsin law, particularly, *State v. Tarlo*, 2016 WI App 81, 372 Wis. 2d 333, 887 N.W.2d 898, requires that, to qualify for restitution, damages must be incurred following the commission of the crime. Here, according to the facts agreed to by the State, all damages asserted by the claimants pre-dated Hinrichs' downloading of the files. Therefore, the court concluded that the State's restitution request failed because the facts to which the State agreed did not establish a "causal nexus between [Hinrichs'] crime, possessing child pornography, and subsequent losses from revictimization through the creation, circulation or possession of the pornography." The State appeals.

4

**DISCUSSION**

¶8 The State argues that the circuit court erred in denying its request for restitution for two reasons: first, because the court "failed to allow" the State to present evidence in support of its claims for restitution; and second, because the court's determination is based on a misinterpretation of **Paroline** and **Tarlo**. We address these arguments in turn, after first setting forth the general principles governing restitution.

*I. Legal Standards Governing Restitution*

¶9 The Wisconsin Constitution guarantees restitution to crime victims as provided by law. *See* WIS. CONST. art. I, § 9m. Restitution is governed by WIS. STAT. § 973.20. Pursuant to this provision, when imposing sentence or ordering probation, the circuit court "shall" order the defendant to pay restitution to "any victim of a crime considered at sentencing," unless the court finds "substantial reason not to do so." Sec. 973.20(1r).[3]

¶10 At a restitution hearing, the victim has the burden of demonstrating "by the preponderance of the evidence the amount of loss sustained by [the] victim as a result of a crime considered at sentencing." WIS. STAT. § 973.20(14)(a). The victim must also show a "causal nexus" between the crime considered at sentencing and the disputed damage. **Tarlo**, 372 Wis. 2d 333, ¶6; *State v. Canady*,

---

[3] This provision is subject to some exceptions, not relevant here. Also, the phrase "crime considered at sentencing" found in WIS. STAT. § 973.20 is defined as "any crime for which the defendant was convicted and any read-in crime." Sec. 973.20(1g)(a). Therefore, in discussing Hinrichs' crime for purposes of restitution in this opinion, we include his read-in crimes.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

2000 WI App 87, ¶9, 234 Wis. 2d 261, 610 N.W.2d 147. Before a circuit court may order restitution, "'there must be a showing that the defendant's criminal activity was a substantial factor in causing' pecuniary injury to the victim in a 'but for' sense." *State v. Johnson*, 2005 WI App 201, ¶13, 287 Wis. 2d 381, 704 N.W.2d 625; *see also State v. Rash*, 2003 WI App 32, ¶7, 260 Wis. 2d 369, 659 N.W.2d 189. While courts are to "construe the restitution statutes broadly and liberally in order to allow victims to recover their losses, those losses must still be shown to be *as a result of a defendant's criminal activity.*" *Tarlo*, 372 Wis. 2d 333, ¶7 (internal quotation marks omitted) (emphasis in original).

¶11    "[Circuit] courts have discretion in deciding on the amount of restitution and in determining whether the defendant's criminal activity was a substantial factor in causing any expenses for which restitution is claimed." *Johnson*, 287 Wis. 2d 381, ¶10. "When we review a [circuit] court's exercise of discretion, we examine the record to determine whether the [circuit] court logically interpreted the facts, applied the proper legal standard and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach." *Id.*

## II. Whether the Circuit Court Impermissibly Denied the State the Opportunity to Present Additional Evidence

¶12    The State argues that the circuit court "denied the State and the victims their opportunity to present evidence of their losses and evidence to establish that Hinrichs' crime caused those losses." The State further asserts that the court "declined to allow the admission of evidence under [WIS. STAT.] § 973.20(13), limiting the hearing to argument between the parties on the question of whether restitution was permitted in Hinrichs' case." Further, according to the State, because Hinrichs did not stipulate to the amount of restitution and the

amount could not be determined at sentencing, the court was required to hold an evidentiary hearing after sentencing, pursuant to § 973.20(13)(c)1.-4. The State also cites § 973.20(14)(d), which provides that at a restitution hearing, "[a]ll parties interested in the matter shall have an opportunity to be heard, personally or through counsel, to present evidence and to cross-examine witnesses."

¶13    In response, Hinrichs argues that the State misconstrues what actually occurred in the circuit court. We agree.

¶14    Contrary to the State's characterization, the transcript of the February 1, 2019 restitution hearing unambiguously shows that the circuit court and the parties agreed to a bifurcated process in which, at the February 1 hearing, the parties would present legal arguments as to whether restitution was permitted, and that, depending on the outcome on the legal issues, an evidentiary hearing may or may not be held. The court began the February 1 hearing by stating: "We're here for a restitution hearing to my understanding that does not require the taking of evidence but legal argument. The State filed a proposed order. The Defense, on the 29th of January, filed a motion to strike the restitution request and supporting Memorandum of Law." In response to the court's summary of the procedural posture of the case, the prosecutor stated:

> [T]here likely will be evidence that needs to be taken at some point, but we figured, through talking with the court's clerk, there's only a half hour set aside for today, that we could figure out the law that we'll be operating under to make that evidentiary hearing a little bit more meaningful and impactful and that's what at least I was hoping would happen today.

Hinrichs then clarified that, in his motion to strike restitution, he had requested that the court also "strike" any other hearing so that "there would be no evidentiary hearing." The prosecutor agreed with Hinrichs' characterization of

Hinrichs' motion, and later, after the parties presented their legal arguments, the prosecutor reaffirmed his understanding of the procedure that would follow:

> We're asking for $25,000, but again I guess we only get to that point if the court at least agrees with me that there exists a factual basis for a child pornography possessor to owe restitution because of what I've just outlined here today. If the Court disagrees with that, then I agree with [defense counsel] that based on Wisconsin law at this point, there's no reason to go forward to a restitution evidentiary hearing.

Thus, the State expressly agreed that an evidentiary hearing was dependent upon whether the circuit court accepted the State's legal theory of restitution or instead accepted the arguments advanced by Hinrichs in support of his motion to strike restitution.[4]

¶15 With regard to the State's documents in support of its restitution request, the record shows that the State had the opportunity at the restitution hearing to provide these documents to the court but declined to do so. When the court informed the prosecutor that the court did not have the documents that outlined the basis for the claimed losses referenced in Hinrichs' motion, the prosecutor stated:

> You don't have those, Your Honor. If you would like them, I can give them to you. Again I would say that none of that matters for this portion. If the court finds that there is a cause to ask for restitution, we'll go through everything at the evidentiary portion. I would urge you not to make any determinations about specific individuals until we've heard evidence on it.

---

[4] Toward the conclusion of the February 1 hearing, the circuit court summarized what would happen next: "We would have to have an evidentiary hearing, depending on my ruling, and we're not doing that here today.... I'm going to take this under advisement and read *Tarlo* carefully, think about these arguments and probably get out a written decision, maybe call you both back just for an oral one."

¶16     Rather than providing the circuit court with the State's documents in support of restitution or making any offer of proof as to how the documents would support its legal theory or respond to Hinrichs' motion to strike, the State agreed that Hinrichs' representations about the documents (contained in Hinrichs' motion) were accurate. Among those representations were that one of the victims was unaware that she appeared in any pornographic images and that all of the psychological evaluations and other documents in support of the claimed losses contained dates ranging from 2005 to 2017, before Hinrichs possessed any of the images underlying his conviction, which occurred in 2018.[5] The court stated that it would accept the dates in Hinrichs' motion as accurate, without objection from the State. And although the prosecutor stated at one point that "likely a number of [the documents] would be supplemented during the evidentiary hearing," he made no offer of proof as to what any additional evidence would show, and in particular, he did not challenge Hinrichs' repeated assertions that, according to the State's own documents, no losses accrued after 2017 and that therefore restitution was not permitted under *Tarlo*. Thus, the circuit court "decline[d] to accept and review" the documents the State provided to Hinrichs "because there was no proffer that they contained evidence which would have supplied the necessary causal nexus" between Hinrichs' crime and any losses the restitution claimants may have suffered.

---

[5] The State's only reference to what its documents showed, aside from the State's agreement to Hinrichs' characterization of the documents, was the prosecutor's statement that "they gave past medicals to describe why they're asking for future, that the past will likely show us what might be necessary in the future. They gave us doctor's evaluations indicating that the trauma continues but, yes, it was a general restitution." However, because the State agreed with Hinrichs' representations that all of the psychological evaluations occurred prior to 2018, before Hinrichs' crime, and that all of the other pertinent documents also pre-dated Hinrichs' crime, even the prosecutor's statement that the "trauma continues" cannot reasonably be construed as a statement that the trauma continued after Hinrichs' crime.

¶17     Based on the foregoing, we reject the State's characterization that the circuit court denied the State the opportunity to present additional information in support of its restitution request.  Rather, the State declined to submit the documents that it had provided to Hinrichs, agreed to Hinrichs' characterization of the date-related contents of those documents, made no offer of proof that it had pertinent evidence supporting any losses following Hinrichs' crime, and agreed with the court that an evidentiary hearing would occur only if the court concluded that restitution was recoverable under the law.[6]  Thus, the circuit court did not err in declining to hold an evidentiary hearing when it determined that, based on the facts the State agreed to, restitution is not permitted under Wisconsin law.  We now turn to the State's challenge to the court's conclusion that restitution cannot be awarded under Wisconsin law.

### III. Whether the Circuit Court Erred in Determining that the State's Restitution Request is Not Permitted Under Wisconsin Law

¶18     The State argues that the circuit court erred in determining that the State's restitution request is not permitted under Wisconsin law.  Specifically, according to the State, the circuit court's determination is based on a misinterpretation of both the United States Supreme Court opinion in *Paroline* and this court's opinion in *Tarlo*.  The State contends that *Paroline* supports reversal of the circuit court's decision and that *Tarlo* is not on point.  We begin by discussing *Paroline*, which the State urges us to follow in interpreting Wisconsin law.  We conclude that, even assuming *Paroline* could be construed as consistent with Wisconsin law, the circuit court did not err in denying the State's restitution

---

[6] The State also agreed that its documents showed that one of the claimants was unaware that pornographic images of her existed and that her psychological evaluation stated that she was "not currently suffering from clinically diagnosed psychological problems."

request because the State failed to establish, based on the facts to which it agreed, that restitution is permitted under Wisconsin law.

## A. *Paroline v. United States*

¶19    In *Paroline*, the United States Supreme Court interpreted 18 U.S.C. § 2259 ("the federal statute"), which mandates restitution in cases involving the possession of child pornography.[7]    *Paroline* involved a young girl who was sexually abused by her uncle when she was eight and nine years old. *Paroline*, 572 U.S. at 440.  This abuse was used to produce child pornography. *Id.*  The uncle was convicted, sentenced to prison, and ordered to pay $6,000 in restitution. *Id.*    The victim participated in therapy, and, with time and support from her family, her therapist determined that she was "back to normal." *Id.*  However, approximately 10 years later, when the victim was seventeen, she experienced "a major blow to her recovery" when "she learned that images of her abuse were being trafficked on the Internet." *Id.*  The possessors of her images numbered in the thousands. *Id.*  This knowledge renewed the victim's trauma and, as she explained in a victim impact statement submitted to the federal district court, she lived "in constant fear" of recognition and humiliation, her life and her feelings were "worse now," and she felt she was "being abused over and over and over again." *Id.* at 440-41.  The Court noted that "the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of

---

[7]  The statute was amended in 2018, at least in part due to the Supreme Court's *Paroline v. United States*, 572 U.S. 434 (2014) decision. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, 132 Stat. 4383 (2018) (codified at 18 U.S.C. § 2259).

individuals have viewed and will in the future view images of the sexual abuse she endured." *Id.* at 457.

¶20   Defendant Paroline was one of the many individuals who possessed the victim's images and he was convicted for that possession. *Id.* at 441. The victim sought restitution from Paroline, including damages for lost income and future counseling costs under the federal statute. *Id.* The parties stipulated that "the victim did not know who Paroline was and that none of her claimed losses flowed from any specific knowledge about him or his offense conduct." *Id.* at 442.

¶21   On appeal, the Supreme Court addressed "the proper causation inquiry for purpose of determining the entitlement to and amount of restitution" under the federal statute. *Id.* at 443. Because the federal statute defines a victim as a person harmed "as a result of a commission of a crime," the parties in *Paroline* agreed that the statute imposed a causation requirement. *Id.* at 445. The Court construed the federal statute as applying a "proximate cause" requirement, under which restitution was proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 448.

¶22   Significantly, in determining proximate cause, the Court explicitly rejected a "but-for" causation requirement, concluding that upon the facts before it, "a showing of but-for causation cannot be made." *Id.* at 450. In support of this conclusion, the Court observed that "[f]rom the victim's perspective, Paroline was just one of thousands of anonymous possessors" and that "it is not possible to prove that her losses would be less (and by how much) but for one possessor's individual role in the large, loosely connected network through which her images circulate." *Id.* Moreover, even without Paroline's offense of viewing the child

pornography, "thousands would have viewed and would in the future view the victim's images, so it cannot be shown that her trauma and attendant losses would have been any different but for Paroline's offense." *Id.* The Court noted that this "is especially so given the parties' stipulation that the victim had no knowledge of Paroline." *Id.*

¶23 However, the Court also acknowledged that the victim suffered the type of losses contemplated by the federal statute, stating that "the victim's costs of treatment and lost income resulting from the trauma of knowing that images of her abuse are being viewed over and over are direct and foreseeable results of child pornography crimes." *Id.* at 449. The Court further stated that "[i]t would be anomalous to turn away a person harmed by the combined acts of many wrongdoers simply because none of those wrongdoers alone caused the harm." *Id.* at 452. The Court observed: "[T]here can be no doubt [that] Congress wanted victims to receive restitution for harms like this. The law makes restitution 'mandatory,' … for child-pornography offenses …, language that indicates Congress' clear intent that victims of child pornography be compensated by the perpetrators who contribute to their anguish." *Id.* at 458.

¶24 Thus, instead of adopting a but-for standard of causation, the Court looked to tort law and concluded that "the various aggregate causation tests the victim and the Government cite … are sound principles" to apply under the circumstances. *Id.* at 451-52. Ultimately, the *Paroline* court concluded:

> In this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying [the federal statute] should order restitution in an amount that comports with the defendant's

13

> relative role in the causal process that underlies the victim's general losses.

*Id.* at 458. The Court acknowledged that its approach was "not without its difficulties" but stated that "courts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims," but not for the conduct of others. *Id.* at 462.

¶25 *Paroline* has been addressed in only one published case in Wisconsin, *Tarlo*, which we now discuss.

**B.** *State v. Tarlo*

¶26 In *Tarlo*, the defendant Tarlo was convicted of possession of child pornography. *Tarlo*, 372 Wis. 2d 333, ¶3. The mother of a child who was in one of the images that Tarlo possessed sought restitution from Tarlo for lost income. *Id.* The mother claimed that she was deprived of lost income due to the earlier arrest and ultimate incarceration of her husband (who was not Tarlo) for producing child pornography, including the pornographic image of her daughter. *Id.* On appeal, Tarlo argued that the mother failed to meet her burden of demonstrating that the lost income she sustained was a result of Tarlo's crime of viewing and possessing the daughter's image. *Id.* This court agreed. *Id.*

¶27 We noted that before restitution can be ordered, the victim must show a "causal nexus" between the crime considered at sentencing and the damage. *Id.*, ¶6. However, the evidence presented at the restitution hearing in *Tarlo* established "only financial losses incurred as a result of the earlier conduct of the mother's husband in producing the child pornography" and did "not

14

establish that any of the losses resulted from Tarlo's criminal conduct, or even general trafficking of the daughter's image over the Internet." *Id.*, ¶8. We observed that when the mother was asked at the restitution hearing if she anticipated any future expenses related to Tarlo's crime such as expenses for treatment or therapy, she only indicated that "there could be." *Id.*, ¶10. And although this court did not doubt the mother's testimony that her daughter is revictimized every time an individual views her image, we concluded that "evidence still needed to be presented from which the circuit court could conclude that financial losses claimed by the mother resulted from the viewing and possession of her daughter's image …." *Id.*, ¶11.

¶28 Significantly, in reaching this conclusion, we reasoned that "[t]he restitution statute places on the victim the burden of proving that any losses sustained were 'a result of a crime considered at sentencing,'" and that "[a] 'result' of a crime follows from the commission of a crime; the result does not precede the crime." *Id.*, ¶18 (quoting WIS. STAT. § 973.20(14)(a)).

¶29 The *Tarlo* court discussed and distinguished the Supreme Court's decision in *Paroline*. *Id.*, ¶¶11-16. We observed that "the evidence discussed by the Court [in *Paroline*] indicates [that] the restitution sought by the victim related to the 'major blow to her recovery' which occurred when she learned at age seventeen that her image was being viewed on the Internet, by individuals, such as Paroline." *Id.*, ¶15. "By contrast," we observed, "in the case before us, there simply was no evidence presented of income lost or treatment costs incurred or of income that will be lost or costs that will be incurred, as a result of Tarlo or others viewing and possessing the daughter's image." *Id.*, ¶15. Thus, to the extent *Tarlo* suggests that *Paroline* provides any guidance in interpreting Wisconsin law, *Tarlo*

appears to read ***Paroline*** as supporting the conclusion that losses must follow, rather than precede, the defendant's offense.

## C. The Circuit Court Properly Determined that, Under the Facts Agreed to by the State, Restitution is Not Permitted Under Wisconsin Law

¶30 Here, the circuit court rejected the approach taken in ***Paroline***, concluding that it was based on a federal statute and was not compatible with Wisconsin restitution law. Instead, relying on ***Tarlo***, the court concluded that the State had not shown that any alleged losses resulted from Hinrichs' crime. Applying the ***Tarlo*** language quoted above, the court concluded that "in order to be valid for purpose of restitution in Wisconsin, losses sustained by victims must follow the commission of the crime," and that "[t]his requires evidence that the damage be sustained following the downloading of files by [Hinrichs]." The court found that none of the damages alleged by the State accrued after Hinrichs' criminal conduct. The court specifically found that one claimant did not have any knowledge that she appeared in pornographic images, that another claimant's "alleged losses are documented from 2007 through 2016, ending two years before [Hinrichs'] criminal conduct," and that the "remaining victims offer only generalized damages, none accruing after [Hinrichs'] criminal conduct." Thus, the court "decline[d] to accept and review" the documents the State provided to Hinrichs "because there was no proffer that they contained evidence which would have supplied the necessary causal nexus" between the claimed losses and Hinrichs' offense, as required by precedent such as ***Tarlo***. As a result, the court denied the State's request for restitution without an evidentiary hearing.[8]

---

[8] The State argues that the circuit court's denial of restitution is premised on the State's failure to show that the victims knew of Hinrichs' specific conduct of viewing the images. For example, at one point, the court stated: "The documents could not possibly establish the nexus

(continued)

¶31   The State argues that, contrary to the circuit court's conclusion, *Paroline*'s reasoning and holding are consistent with Wisconsin's Constitution, statutes, and case law, and that circuit courts should employ *Paroline*'s approach in determining restitution amounts in cases involving possession of child pornography.[9]   The State further argues that the circuit court misinterpreted *Tarlo* in various respects.   However, the State agrees that "*Tarlo* holds … that the victim was not entitled to restitution because she did not meet her burden of linking the defendant's crime to her economic losses."

¶32   We conclude that, even if, as the State argues, *Paroline* can be reconciled with Wisconsin law, including *Tarlo*, the circuit court properly

---

required by Wisconsin law, again because the five victims did not know about this specific defendant's actions in viewing these images."   However, relying on the State's own documentation, the court clearly stated that none of the losses alleged by the State occurred *after* Hinrichs' criminal conduct.   It is on this basis that we affirm the circuit court's decision.

[9]   In so arguing, the State contends that "[f]or the same reasons that the Supreme Court concluded that applying a 'but-for' model of determining cause would undermine the purpose of the federal restitution statute, applying that model would likewise undermine the purpose of restitution in Wisconsin."   In response, Hinrichs argues that the circuit court's rejection of *Paroline* was correct because "the but-for causation the Supreme Court dispensed with in *Paroline* is an established requirement in the law of this state."   *See, e.g.*, *Johnson*, 287 Wis. 2d 381, ¶13 ("[B]efore a [circuit] court may order restitution 'there must be a showing that the defendant's criminal activity was a substantial factor in causing' pecuniary injury to the victim *in a 'but for' sense.*") (emphasis added); *Rash*, 260 Wis. 2d 369, ¶7 (same).   And Hinrichs argues that, as in *Paroline*, in this case, the but-for standard cannot be met.

In reply, the State does not directly address Hinrichs' argument that there is a conflict between *Paroline* and this court's precedent.   Instead, the State construes Hinrichs to be arguing that the but-for language found in Wisconsin's case law means that a victim must show that the defendant's actions were the only reason for the victim's losses, which the State argues is incorrect.   *See State v. Behnke*, 203 Wis. 2d 43, 58-59, 553 N.W.2d 265 (Ct. App. 1996) (defendant's actions need not be the sole factor in the victim's losses).

We do not address the parties' dispute over the but-for causation approach to restitution because we conclude that the State's restitution request fails under controlling language in *Tarlo* separate from that approach.

construed *Tarlo* as requiring the State to show that the claimants sustained losses as a result of—that is, *following*—Hinrichs' 2018 crime of possessing child pornography. *See Tarlo*, 372 Wis. 2d 333, ¶18 (explaining that a restitution claimant must show that any losses sustained were a "result of a crime considered at sentencing" and that "[a] 'result' of a crime follows from the commission of a crime; the result does not precede the crime"). Further, and as *Tarlo* suggests, such a showing also appears to be required under *Paroline*, in which the trial court had evidence before it regarding the victim's continued trauma. *See Paroline*, 572 U.S. at 440-41; *Tarlo*, 372 Wis. 2d 333, ¶15. We also conclude that the State not only failed to submit or proffer any facts showing that the claimants sustained any losses following Hinrichs' crime but that the State actually agreed to facts showing that all claimed losses pre-dated Hinrichs' crime. These facts preclude restitution under *Tarlo*, and likely under *Paroline* as well.[10]

¶33 Accordingly, we conclude that the circuit court properly denied the State's request for restitution without an evidentiary hearing.

## CONCLUSION

¶34 For the reasons stated above, we affirm.

---

[10] We note, however, that even if *Paroline* does not require a specific showing of damages *following* a defendant's offense, the result in this case would be the same because under the controlling precedent of *Tarlo*, such a showing is required. And although this court is not required to follow *Paroline* because it is based on federal restitution law, we are required to follow our own precedent. *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) (we may not modify or overrule a prior opinion of this court).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.