# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2025

Lyle W. Cayce
Clerk

_____

No. 24-30266

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Joseph Allen Bevers,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:23-CR-127-1

_____

Before Elrod, *Chief Judge*, and Duncan and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

On appeal, Defendant-Appellant Joseph Allen Bevers challenges his restitution awards on multiple grounds. We AFFIRM the district court's restitution award rendered in favor of C.O., but VACATE and REMAND the awards rendered in favor of the other twelve victims.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30266

I.

In late May 2023, Bevers was charged in a three-count indictment with the production, receipt, and possession of child pornography. In October 2023, he pleaded guilty, pursuant to a written plea agreement, to the production of child pornography offense—knowing use of a minor, 15 years old, to engage in sexually explicit conduct (with Bevers) for the purpose of producing a visual depiction of that conduct, in violation of 18 U.S.C. § 2251(a)—charged in Count 1 of the three-count indictment. That minor was victim C.O.

Regarding the remaining two counts charged in the indictment and payment of restitution, the plea agreement states:

> If the Defendant completely fulfills all of his obligations and agreements under this plea agreement, the government agrees to dismiss the remaining counts in the Indictment after sentencing, and it will not prosecute the Defendant for any other offense known to the United States Attorney's Office, based on the investigation which forms the basis of the Indictment.

> * * *

> In addition to the penalties set forth in the preceding paragraphs, the Court may order the Defendant to make restitution to the victim(s) in this case and that the amount of restitution and method of payment is in the discretion of the Court; however, such amount shall be no less than **$3,000 per victim** (pursuant to 18 U.S.C. § 2259(b)(2)(B))[.]

Further regarding payment of restitution, the district court, during the October 10, 2023 change-of-plea hearing, queried:

> In addition to the penalties set forth in the preceding paragraphs, restitution may be ordered pursuant to 18, U.S.C., Section 2259(a)(2). Do you understand and agree that

2

restitution in this case is *not* limited to the amount or amounts—to the amount or victims referred to in the specific charge in which you pled guilty; and it will be determined by the Court after a complete review of the evidence developed in the investigation of the case by the government and further investigation by the United States Probation Office as contained in the presentence report?

Bevers responded: Yes, sir.

In Bevers' December 6, 2023 Pre-Sentencing Investigation Report ("PSR"), the probation officer indicated that C.O. had not, to date, submitted a claim for restitution. In its response to the initial version of the PSR, however, the government asserted that restitution requests might be "submitted by victims in this case" and "reserve[d] its rights to file a sentencing/restitution memorandum or other necessary documentation at a later date if deemed necessary."

On February 13, 2024, the government submitted a memorandum under seal, seeking "restitution for the known victims that have requested restitution." The government also submitted a letter signed by C.O., and documentation received from the other 12 persons seeking restitution.

In her letter, C.O. stated that she currently was 17 years old and had been attending weekly counseling sessions "to help [her] deal with the things that were done to [her]." C.O. also explained that the Louisiana Department of Social Services had been paying for the counseling sessions, such that she did not know how much each session actually costs; and that she did not know if the department would stop paying for the sessions once she turned 18 (in September 2024), or upon her aunt obtaining "full custody" of her (in January 2024). Accordingly, "to help [her] pay" for continued counseling, C.O. requested restitution in the amount of $25,000 based on an estimate of $100 per session and a total of 50 sessions per year for five years.

No. 24-30266

At the April 11, 2024 sentencing hearing,[1] the government confirmed the district court's receipt of these documents and identified the number of images that were in Bevers' possession of each of the additional 12 individuals seeking restitution.[2] Bevers objected to the requests, arguing that the evidence failed to substantiate a restitution award, emphasizing that no one had appeared at sentencing for purposes of cross-examination, and questioning the legitimacy of the evidence. The court took the restitution matter under advisement.

The day after sentencing, the district court's judgment and a separate order addressing restitution were entered. The April 12, 2024 restitution order required Bevers to pay an aggregate of $73,000 in restitution—$20,000 to C.O. and $53,000 to the other 12 victims. The order lists the pseudonym for each victim, the restitution amount that each requested, and the amounts awarded. It also acknowledges Bevers' argument "that the victims had not met their burden of proving that they are entitled to restitution from him." The order concludes:

> Having carefully considered the documents submitted in support of the request for restitution; the arguments made at the restitution hearing; the record; 18 U.S.C. § 2259(a)(2); the factors set forth in *Paroline*; and being otherwise fully advised, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that restitution in the [stated] amounts is reasonable and shall be issued[.]

---

[1] The district court imposed a within-guidelines prison term of 360 months and a lifetime term of supervised release.

[2] The images relate to Bevers' dismissed possession offense. Bevers had two images of John Doe 3, two images of John Doe 4, two images of Angela, four images of April, thirteen images of Sierra, six images of Savannah, ten images of Sklyar, eight images of Sally, one image of Jenny, one image of Sarah, one image of Mya, and one image of Raven.

No. 24-30266

On April 15, 2024, Bevers filed an objection to the restitution order, which "cites the reasons offered at sentencing of April 11, 2024." An amended judgment, which includes the restitution awards, was entered in the record on April 17, 2024.

## II.

On appeal, Bevers challenges his restitution awards on multiple grounds.

## A.

First, Bevers asserts that his restitution awards should be vacated because they were based on judge-found facts, rather than a jury determination beyond a reasonable doubt. This challenge fails because that issue is foreclosed by circuit precedent. *See United States v. Rosbottom*, 763 F.3d 408, 419–20 (5th Cir. 2014) (holding that restitution awards are not submitted to a jury because no statutory maximum applies to restitution awards); *United States v. Caudillo*, 110 F.4th 808, 810-11 (5th Cir. 2024) (same). "We are bound by our precedent in the absence of an intervening contrary or superseding decision by this court sitting en banc or by the United States Supreme Court." *See United States v. Montgomery*, 974 F.3d 587, 590 n.4 (5th Cir. 2020).[3]

## B.

Next, regarding the $20,000 award to C.O., the victim of his production offense, Bevers contends that the district court failed to conduct the necessary proximate-cause analysis and that the award is not supported by sufficient reliable evidence. The information set forth in C.O.'s letter, he argues, is based solely on speculation and unreliable guesses regarding her need for future counseling and the amount of costs she would have to incur. For these

---

[3] Bevers concedes that the issue is foreclosed but preserves it for Supreme Court review.

reasons, Bevers asks that the restitution award to C.O. be vacated. Disagreeing, the government maintains that C.O.'s statement provides sufficient evidence of her future costs. Additionally, given the information in the record detailing Bevers' conduct vis-à-vis C.O., the government argues, the district court would have been "cognizant of the type of counseling" that C.O. required.

In *Paroline*, the Supreme Court recognized that "[r]estitution is . . . proper under [18 U.S.C.] § 2259 only to the extent the defendant's offense proximately caused a victim's losses." *Paroline v. United States*, 572 U.S. 434, 448 (2014). Accordingly, "the sentencing court's 'failure to give a reasoned analysis of how it arrived at its [restitution] award in a manner that allows for effective appellate review' may require vacating and remanding." *United States v. De Leon*, 728 F.3d 500, 506–07 (5th Cir. 2013) (quoting *United States v. Wright,* 639 F.3d 679, 686 (5th Cir. 2011), *rev'd on other grounds by In re Amy Unknown,* 701 F.3d 749 (5th Cir. 2012)). But specific findings may not be strictly necessary "if the record provides an adequate basis to support the restitution order." *Id.* (quoting *United States v. Blocker*, 104 F.3d 720, 737 (5th Cir. 1997); *United States v. Sandstrom*, No. 24-30309, 2025 WL 692342, at *1, 3–4 (Mar. 4, 2025).

Our review of the district court's restitution award to C.O. reveals no reversible error. As the Supreme Court recognized in *Paroline*, "but-for causation [can] be shown with ease in many cases involving producers of child pornography." 572 U.S. at 449 (citing 18 U.S.C. § 2251(a)). Considering Bevers' conduct involving C.O., the fifteen-year-old victim of his production

offense, as chronicled in the PSR, the district court's failure to provide a detailed, express analysis of proximate cause is of no consequence.[4]

Additionally, though the government's submission in support of C.O.'s restitution request—consisting solely of C.O.'s letter—is surprisingly rudimentary, Bevers' unsupported criticisms fail to convince us that the district court's $20,000 award (for future counseling costs) lacks sufficient evidentiary support. That victims of child pornography suffer psychological harm for which mental health counseling is warranted cannot be seriously questioned. Indeed, the "full amount of the victim's losses" that the court is directed to order the defendant to pay includes costs "reasonably projected to be incurred in the future, by the victim," for "medical services relating to physical, psychiatric, or psychological care." 18 U.S.C. § 2259(a), (b)(1), and (c)(2)(A). C.O.'s letter reports that she was undergoing weekly counseling as of the time her letter was written, and contemplated continuing to do so for the next five years at an estimated cost of $100 per appointment. Considering the request, the district court ordered $20,000 of the $25,000 that C.O. had requested.

On appeal, Bevers questions whether C.O., rather than the Louisiana Department of Social Services, actually will incur the costs of C.O.'s future counseling. But Bevers' position is supported by only his own speculation. He provides no authoritative information—regarding the department's policies, procedures, or programs—giving credence to his position. And, in any event, the possibility that a third party, including Louisiana taxpayers, *may* bear the costs of health care necessitated by Bevers' own illegal conduct certainly does not inure to his benefit. *Cf.* 18 U.S.C. § 2259(b)(4)(B) (ii) ("A

---

[4] Furthermore, while before the district court, Bevers did not present a proximate cause challenge to the restitution award to C.O. Accordingly, our consideration of that argument is limited to plain error review.

court may not decline to issue an order under this section because of . . . the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source."). Lastly, though Bevers appears to question the propriety of the $100 per appointment rate utilized by C.O., he provides no market or other data demonstrating that the district court's award reflects an inaccurate future cost estimate.

## C.

Regarding the restitution awarded to the other 12 victims, Bevers contends that the district court failed to conduct the required proximate-cause analysis under *Paroline*, that the evidence did not support the restitution awards, and that the court "simply awarded the money requested . . . without further analysis," rather than ensuring that he be required to pay only "an amount of restitution proportionate to his share of the victim's harm." He blames this asserted error, in large part, on the government, which he contends, did not "present evidence of recoverable losses *resulting from* [his conduct] as to any victim other than C.O."; instead, he argues, it simply introduced the number of images in his possession for each person "without explanation."

When the defendant "is one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim[,]" identifying "a discrete, readily definable incremental loss he caused" is impossible. *Paroline*, 572 U.S. at 449, 456–57. And, when a single individual possesses only a handful of images of a particular victim, "[his] contribution to the causal process underlying the victim's losses [is] very minor, both compared to the combined acts of all other relevant offenders, and in comparison to the contributions of other individual offenders, particularly distributors (who may have caused hundreds or thousands of further viewings) and the initial producer of the child pornography." *Id.* at 454. But, at the same time, "it is indisputable that [the individual possessor] was a part of

the overall phenomenon [the trade in the victim's images] that caused her general losses." *Id.* at 457.

In such circumstances, given the Supreme Court's recognition, in *Paroline*, of a proximate-cause limit on restitution payments ordered under § 2259, "a district court 'must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses.'" *United States v. Halverson*, 897 F.3d 645, 654 (5th Cir. 2018) (quoting *Paroline*, 572 U.S. at 459). "The amount would not be severe in a [possession] case like [Paroline's], given the nature of the causal connection between the conduct of [this type of] possessor . . . and the entirety of the victim's general losses from the trade in her images, which are the product of the acts of thousands of offenders." *Paroline*, 572 U.S. at 458–59. But, it is not "a token or nominal amount." *Id.* at 459. "The required restitution would be a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Id.* This determination "cannot be a precise mathematical inquiry"; instead, it involves "the use of discretion and sound judgment." *Halverson*, 897 F.3d at 654 (quoting *Paroline*, 572 U.S. at 459).

To effectively perform this task, the Supreme Court, while recognizing that "[t]here are a variety of factors district courts might consider in determining a proper amount of restitution," also instructed:

> [D]istrict courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images . . . , then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses. These could include the number of past criminal defendants found to have contributed to the victim's general losses . . . ; whether the defendant reproduced or distributed

> images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.
>
> These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense.

*Paroline*, 572 U.S. at 459–60 (internal record citations omitted). Finally, recognizing that "[t]his approach is not without its difficulties," and that "[r]estitution orders should represent 'an application of law,'" not "a decisionmaker's caprice," despite "involv[ing] discretion and estimation[,]" the Court added: "Based on its experience in prior cases of this kind, the [g]overnment—which . . . bears the burden of proving the amount of the victim's losses, § 3664(e)—could also inform district courts of restitution sought and ordered in other cases." *Id*. at 462 (quoting *Philip Morris USA v. Williams*, 549 U.S. 346, 352 (2007).

Here, in addition to the $20,000 awarded to C.O., the district court ordered restitution payments totaling $53,000 to the other 12 victims—$3,500 each to John Doe 3, John Doe 4, and Angela; $4,000 to April; $8,000 to Sierra (Jan Socks 1); $5,000 to Savannah (Jan Socks 2); $7,500 to Skyler (Jan Socks 3); and $3,000 each to Jenny, Sarah, Raven, and Mya. As indicated above, however, the district court's explanation of its determination of these awards is extremely brief, stating only:

> Having carefully considered the documents submitted in support of the requests for restitution; the arguments made at the restitution hearing; the record; 18 U.S.C. § 2259(a)(2); the factors set forth in *Paroline*; and being otherwise fully advised, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED

that restitution in the [stated] amounts is reasonable and shall
be issued[.]

In this instance, the district court's explication of the bases of its res-
titution awards to the 12 victims other than C.O. is a bit too abridged. Con-
trary to Bevers' assertion, the district court did not simply "award the money
requested." Only one victim, Skylar, was awarded the same amount that was
requested. Otherwise, however, though it seems apparent that the district
court took into account the number of images of each child that Bevers pos-
sessed and the amounts requested by each victim, we are unable to ascertain
exactly how that data factored into the court's awards and whether an abuse
of discretion occurred.

Unlike in *Halverson*, the district court's opinion does not indicate that
a specific formula or percentage was utilized and, unlike in *Sandstrom*, we are
not confident that we can accurately derive that information from the record.
Additionally, the district court's order cites "18 U.S.C. § 2259(a)(2)," but
that statutory provision does not exist. Although § 2259(b)(2) exists and es-
tablishes a minimum restitution award of $3,000, that provision applies when
a defendant has been "convicted of trafficking in child pornography," and
Bevers was not convicted of conduct proscribed in any of the sections identi-
fied in § 2259(c)(3). And, in any event, it is not evident exactly how a $3,000
minimum amount factored into the district court's awards. Finally, it is not
apparent whether and how the district court accounted for the fact that, with
respect to the victims other than C.O., Bevers did not have a distribution or
production role.

Regrettably, the government's submissions fail to supply the missing
pieces of the puzzle. In the district court, the relevant portion of the govern-
ment's restitution memorandum simply states:

> The United States seeks restitution for the known victims that have requested restitution. The documentation supporting each of the requests demonstrates the effect of the defendant's crimes on the victims. The documents include victim impact statements as well as some psychological evaluations and reports of economic loss for which the defendant's offenses are the proximate cause.

In short, the government, in this matter, unlike in *Halverson*, apparently did not propose a restitution formula to the district court. Nor has the government here shown that it, as the government had in *Sandstrom* (for Jenny), informed the district court of the average restitution awards previously ordered for each victim. Finally, it not apparent whether the persons preparing the supporting documentation were aware of the number images that Bevers possessed of each victim.

### III.

For the reasons stated, we AFFIRM the district court's restitution award rendered in favor of C.O., but VACATE the restitution awards rendered in favor of the other 12 victims and REMAND for further proceedings consistent with this opinion.

AFFIRMED IN PART; VACATED and REMANDED IN PART.